IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

UNITED STATES OF AMERICA,　　*
　　　　　　Respondent　　　　　*　　Case No. CR-03-00084-SOM

vs.　　　　　　　　　　　　　*
　　　　　　　　　　　　　　　*

LUELENI FETONGI MAKA,　　　　*
　　　　　　Movant　　　　　　*　　Civ. No._____
　　　　　　　　　　　　　　　　　　(To Be Supplied By Clerk)
　　　　　　　　　　　　　　　*
　　　　　　　　　　　　　　　*

## MOVANT'S MEMORANDUM OF AUTHORITIES IN SUPPORT OF HIS MOTION
## PURSUANT TO 28 U.S.C. SECTION 2255 TO SET ASIDE
## OR CORRECT SENTENCE BY A FEDERAL PRISONER

TO THE HONORABLE SUSAN OKI MOLLWAY UNITED STATES DISTRICT JUDGE:

COMES NOW, LUELENI FETONGI MAKA, Movant, pro-se files this his Memorandum of Authorities in support of his Motion pursuant to 28 USC Section 2255, and shows this Court the following:

A.

### GROUND OF ERROR ONE

MOVANT CONTENDS THAT HE WAS DENIED EFFECTIVE  ASSISTANCE OF COUNSEL, IN VIOLATION OF THE SIXTH AMENDMENT TO    THE UNITED STATES CONSTITUTION, WHEREAS HIS TRIAL COUNSEL 'S PERFORMANCE FELL BELOW REASONABLE PROFESSIONAL STANDARDS

Claimed Deficienies:

1). Movant's trial counsel rendered ineffective assistance when he conceded Movant's Guilt during his Opening State- ment and Closing Argument for the offenses Alien Smuggl- ing and Alien Harboring without consulting Movant.

Note: Reference (Tr. Transcript       );(Sent.Tr. Sentencing Transcript

2). Movant's trial counsel rendered ineffective assistance when he conceded Movant's guilt to the offense of Conspiracy, during closing argument, an offense of which he is not charged by indictment, and a charge that he was not given Notice of.

3). Movant's trial counsel rendered ineffective assistance when he in effect constructively amended the charging indictment, when on Three occasions he argued to the jury that Movant was guilt of Conspiracy.

4). Movant's trial counsel rendered ineffective assistance when he waived Movant's Statutory right to have a cert -ified interpreter during a criticial stage of his trial proceedings.

Each of the claimed deficient performance of Movant's counsel will be presented in the above order, with the related facts thereafter.

## Counsel's deficient performance Claim(1):

A). Movant's trial counsel rendered ineffective assistance when he conceded Movant's guilt during his Opening Statement, and Closing Argument for the offenses Alien Smuggling and Alien Harboring, without consulting- Movant regarding this overarching trial strategy.

### RELEVANT FACTS

On Nov. 10, 2004, counsel began the Opening Statement in Movant's case. Counsel Domingo told the jury that: " You will hear evidence of alien smuggling, and you will hear evidence of documents being held. However, we ask you to keep an open mind as to whether or not the government has proven the trafficking, the involuntary servitude, or the forced labor situations. And we're confident at the end of the trial that you will find Lueleni Maka not guilty of these charges." (Tr.p.50:11/10/04).

2

On Dec. 7 '2004, counsel Domingo, in his Closing Argument to the jury argued that: " I'm going to tell you, ladies  and gentlements, **find Mr. Maka guilty of smuggling. He's guilty of smuggling. He's guilty of harboring aliens.** But if you want to look at the real picture that we have her, this is it: It's  a **conspiracy to bring people in from Tonga, which Mr. Maka  was involved with**, so that they could come here and work send money back home." (Tr.p. 74: dated: 12/07/04).

During Closing Arguments Movant's counsel continued to admit his guilt to the jury for an offense that he was not  on trial for, when he stated: **" Now, what you see is a conspiracy,. .."**(Tr.p. 75: Dated: 12/07/04).

Counsel Domingo just continued when he said to the  jury: "If you look at the **conspiracy** that we have, we have a whole bunch of law violators. Okay? And what they're doing is they're violating the immigration laws of the United States, from  **Mr. Maka on through everyone else who was part of this.**" (Tr.p.76 : Dated: 12/07/04).

Thus, before Movant's counsel closed his arguments he told the jury that: " You are judges of the facts. I trust that after careful deliberation that you will do the right thing here. **You will find Mr. Maka guilty of what he's guilty of: smuggling and alien harboring.** But as, far as involuntary servitude, forced labor, human trafficking, and even the documents involving that- because in order to convict him of that particular charges, you got to find that these things occurred either one of these." ( Tr. pp. 90-91: Dated: 12/07/04).

After Movant's counsel completed his Closing Arguments, the Government recapped on his concession of Maka's guilt with: " But in not asking you to ignore the obvious, what he's done is **conceded for you that Mr. Maka smuggled these young men, that Mr. Maka harbored these young men**, that he did so so that they could work for him, and that he beat them while they did work for him. " (tr.p. 92: Dated: 12/07/04).

The district court before these arguments gave its instruct -ions to the jury, and he stated in relevant part that:

> "1. Arguments and statements by lawyers are not evid- ence. The lawyers are not witnesses. What they say in their opening statements or closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence.

(Tr.p.5:Dated: 12/07/04).

The district court further instructed the jury regarding Counts 1 through 6 of the indictment charging a violation of 18 U.S.C. Section 1590-Human Trafficking with Respect To Involuntary Serviude and Forced Labor; 18 U.S.C. Section 1594 Attempt , thus stating the following:

" Counts 1 through 6 of the indictment charge the defendant with trafficking Salesi Mahe, Francis Jonathan Tautua's, Inoke Taufalele, Pita Ma'u, Tukutau Tupouata, and Taufa Aho, respect- ively, into the United States for the purpose of obtaining their labor or services in violation of laws against involuntary ser- vitude or forced labor."

4

In considering the offenses charged in Counts 1 through 6, you may not find the defendant guilty as to any of those counts unless all of the following are proved beyond a reasonable doubt as to that count:  (Tr. p. 16: Dated: 12/07/04).

First, that the defendant did recruit, **harbor**, transport, provide, or obtain the person named for labor or services;

Second, that such labor or services were to be obtained or maintained in violation of the laws against involuntary servitude or forced labor; and

Third, that the defendant acted knowingly.

"To recruit" means to seek the services of a person.

"To **harbor** a person" means to give or afford shelter or refuge to that person either openly or secretly.

"To transport" means to transfer or convey from one place to another.

"To provide" means to supply or make available.

"To obtain" means to gain, acquire, or attain.(Tr.p.17:12/07/04).

" Counts 30 through 35 of the indictment charge that the defendant, knowing that an alien had come to, entered, or remain-ed in the United States inviolation of law, did conceal,**harbor**, or shield from detection such alien in any place.

In considering the offenses charged in counts 30 through 35 ,you may not find the defendant guilty of any of those counts unless the following are proved beyond a reasonable  doubt as to that count:

First, the person named in that count was an alien;

5

Second, that person was not lawfully in the United States;

Third, the defendant knew that the person was not lawfully in the United States; and

Fourth, the defendant concealed, harbored, or shielded from detection that person for the purpose of avoiding that person's detection by immigration authorities.

An alien is a person who is not a natural born or naturalized citizen of the United States. An alien is not lawfully in this country if the person was not duly admitted by an immigration officer. (Tr. p. 20: Dated: 12/07/04).

The district court before giving these instructions to the jury, it instructed the jurors as followed:

"...It becomes my duty, therefore, to instruct you on the rules of law that you must follow and apply in arriving at your decision in the case."

" You must follow all of my instructions as a whole. You have no right to disregard or give special attention to any one instruction, or to question the wisdom or correctness of  any rule I may state to you. That is, you must not substitute or follow your own notion or opinion as to what the law is or ought to be."

" It is your duty to apply the law as I give it to  you, regardless of the consequences." (Tr.pp. 3-4:Dated: 12/07/04).

## ARGUMENT AND AUTHORITIES

### Discussion:

1).  The significance of closing argument.

6

Closing argument is not simply a pro forma aspect of the crimi-
nal case, but an essential one:

> Closing argument serves to sharpen and clarify the
> issues for resolution by the trier of fact in    a
> criminal case. For it is only after all the eviden
> -ce is in that counsel for the parties are in posi
> -tion to present their respective versions of   the
> case as a whole. Only then can they argue the in-
> ferences to be drawn from all the testimony,    and
> point out the weaknesses of their adversaries' pos-
> itions. And for the defense, closing argument   is
> the last clear chance to persuade the trier      of
> fact there may be reasonable doubt of the defend -
> ant's guilt.."

... In a criminal trial, which is in the end basically a fact -

finding process, no aspect of such advocacy could be more  im-

portant than the opportunity finally to marshal the evidence for

each side before submission of the case to judgment. **Herring v.**

**New York,** 422 U.S. 853, 45 L. Ed. 2d 593 (1975).

## Movant's Consent & Counsel's Duty To Consult Movant:

The Supreme Court in  **Florida v. Nixion,** 543 U.S. 175, 160

L. Ed 2d 565 (2004), explained that :

> "An attorney undoubtedly has a duty to consult with
> client regarding important decisions, including----
> questions of overarching defense strategy. The obli
> -gation, however, does not require counsel to    ob-
> tain the defendant's consent to every tactical   de-
> cision. But certain decisions regarding the exer  -
> cise or waiver of basic trial rights are of      such
> momemt that they cannot be made for the defendant--
> by a surrogate. A defendant, this Court affirmed  ,
> has the ultimate authority to determine whether  to
> plead guilty waive a jury, testify in his or   her
> own behalf, or take an appeal. Concerning those de-
> cisions, and attorney must both consult the defend-
> ant and obtain consent to the recommended course of
> action.
Id., at 187.

7

In **Strickland v. Washington** 466 U.S. 668, 80 L. Ed 2d 674
, 104 S.Ct. 2052 (1984), the Strickland Court imposed few re-
quirements on attorneys, but one it specifically enumerates is
" **to consult with the defendant on important decisions and to**
**keep defendant informed of important developments in the course**
**of the prosecution.**" Strickland, 466 U.S. at 688. Such consulta
-tion is an ethical cornerstone of the legal profession.  **See**
**Model Rule of Professional Conduct Rule 1.4(b)** ( " A lawyer shall
explain a matter to the extent reasonably necessary to permit
the client ot make informed decisions regarding the representa-
tion.")  **IND PROF'L Counduct Rule 1.2 (a)** ( "A lawyer shall
abide by a client's decisions concerning the objectives of   re
-presentation...and shall consult with the client as to  the
meaNS BY WHICH THEY ARE TO BE PURSUED.")

Discussion concerning a counsel's argument before a jury,
the American Bar Association Code Préfessional Responsibility
, which states in pertinent part:

In appearing in his professional capacity before a trib-
unal, a lawyer shall not:

\*\*\*\*

> (4) Assert his personal opinion as to the justness of a
> cause, as to the credibility of a witness, as to    the
> culpability of a civil litigant, or as to the **guilt  or**
> **innocence of an accused;** but he may argue, on his analy
> -sis of the evidence, for any position or conclusion---
> with respect to the matters stated herein.

## ARGUMENT

8

Though an unusaul defense strategy, courts have held that
conceding guilt to onee count of a multi-count indictment to
bolster the case for innocence on the remaining counts is  a
valid trial strategy which, by itself, does not rise to the
level of deficient performance. See  **United States v. Wilks**  ,
46 F 3d 640 (7th Cir. 1995);  **Anderson v. Calderon**, 232 F 3d
1053 (9th Cir. 2000); and **United States v. Williamson**, 53 F3d
1500 (10th Cir. 1995).

While courts have approved of the strategy that Movant
complains of there has been evident of a client's consent and
that counsel must consult him before such trial strategy. See
**Wilks**, 46 F3d at 643. At this point Movant's ineffective assis
-tance claim, **it is not over counsel's incantation in open
court, but rather that the decision to concde Movant's guilt
was made voluntrily by Movant and that Movant ultimately de-
cided that this was the straregy he wanted to pursue.**     See
**United States v. Wooley**, 127 F3d 627 (7th Cir. 1997).

In **United States v. Blaylock**, 20 F3d 1458 (9th Cir.1993),
the Ninth Circuit set forth the standards to apply to a claim
of ineffective assistance of counsel:

> "To prevail on an inffective assistance of counsel
> claim [a claimant] must show that: (1) his attor -
> ney's performance was unreasonable under prevail -
> ing professional standards. Strickland v. Washing-
> ton, 466 U.S. 668-687-91, 104 S.Ct 2052, 80 L.Ed
> 674 (1984); (2) that there is a "reasonable  pro -
> ability that but for counsel's unprofessional err-
> ors, the result would have been diffent," Id., 104
> S.Ct. at 2068. Strickland defines a reasonable pro
> -ability as a proability suffient to undermine con
> -fidence in the otcome."

See also, **Sims v. Brown**, 425 F3d 560 (9th Cir. 2005).

9

The United States Supreme Court has also held that      a
single, serious error may support a claim of ineffective assis
-tance of counsel.  **See Kimmelman v. Morrison,** 477 U.S. 365  ,
383, 106 S.Ct. 2574 (1986).

(A) <u>**Deficient Performance:**</u>

With regard to the first "prong" --defifient performance
the **Blaylock** opinion observed:

> [U]nder the Strickland test, a court deciding whether
> an attorney's performance fell below reasonable pro -
> fessional standards can look to the ABA standards for
> guidance. Id., at 1466.

See Model rule of Professional Conduct Rule 1.4 (b) ("A
lawyer shall explain a matter to the extent reasonably necess-
ary to permit the client to make informed decisions regarding
the representation.") IND PRO'L CONDUCT Rule 1.2 (a) ("A lawyer
shall abide by a client's decisions concerning the objectives
of representation... and shall **consult with the client** as to
**the means by which they are to be pursued.** See also  **Florida v
Nixion, supra.**

In the instant case, Movant's counsel's conduct is defic-
ient because there is no evidence of Movant's consenting to the
concession of his guilt and there is no evidence that his coun
-sel consulted with him before he conceded his gulit to the
jury. Without any indication as to whether Movant agreed to,
dissented from, or even was aware of his attorney's plan to con
-cede his guilt, the relevant question is whether Movant con-
sented to trila attorney's strategy of conceding his guilt dur
-ing both the opening statement and closing argument? (Trial
counsel may not concede the guilt of a defendant who has plea

10

-ded not guilty, at least not without the defendant's consent.
That is true enough as to the guilt stage.") **Felker v.Thomas,**
52 F 3d 907, 911 (11th Cir. 1995); see also **Wiley v. Sowders,**
647 F2d 642 (6th Cir. 1981); and **United States v. Agee,** 83
F3 882 (7th Cir. 1996). Given the importance of the constitut-
ional rights implicated when Movant's trial attorney conceded
his guilt and the ethical obligations of his trial counsel to
have **consulted** with him before conceding his guilt, thus,
where there is nothing in the records of this case to evident
Movant gave **consent** to the strategy, thus for purpose  of
Strickland counsel's conduct was deficient.

Movant's counsel's performance was deficient, at the be-
ginning of trial. As outlined in **Boykin v. Alabama,** 395 U.S.
238, 23 L. Ed 2d 274 (1969), pleading **not guilty** before trial
implicates the privilege against self-incrimination, the right
to trial by jury, and the right to be able to confornt one's
accusers. See id., at 243. In counsel's opening statement, he
**conceded Movant's guilt on Counts 24-36 of the indictment ,**
**charging Alien Smuggling and Alien Harboring, and conceded es-**
**sential material facts that set up the government's case  for**
**convictions on the more serious counts of Human Trafficking.**
Movant's attorney bypassed all the mentioned rights on behalf
of Movant: he admitted to facts that were necessary for  the
government to prove its case on Counts 24-36, the jury was
never given a chance to render a verdict on Counts 24-36 based
on an adversarial proceeding.

11

Thus, this deficiency of Movant's counsel is not a situa-
tion where the concession of his guilt was made at the very end
of trial, where his counsel realized after the close of evidence
that there was no hope of a favorable verdict and that conceding
guilt to Count 24-36 would hopefully preserve some credibility
for the defense's argument opposing the other counts. Rather,
Movant's counsel decided from the very beginning that Counts 24
-36 where not worth fighting over and relinquished those Con-
stitutional rights of Movant which Rule 11 was designed to pro
-tect.

Movant's counsel opening statement to the jury built a
foundation for the government's case, when he outright told the
jury that: " You will hear evidence of alien smuggling, and you
will hear evidence of documents being held. However, we ask you
to keep an open mind as to whether or not the government  has
proven the **human trafficking, the involuntary servitdue, or the
forced labor** situations. And we're confident at the end of the
trial that you will find Lueleni Maka not guilty of these
charges." (Tr.p. 50: Dated: 11/10/04).

Thus, the above mentioned deficient performance of Movant'
-s counsel was committed without counsel hearing, or, the jury
hearing any evidence of guilt, the adversarial system of testing
the government's case was broken down because Movant's counsel
in effect lessened the government's burden of proof of persuad-
ing the jury of Movant's guilt beyond a reasonable doubt,

12

In conclusion, the Ninth Circuit, in **United States v.** Iho **Thomas,** 417 F3d 1053 (9th Cir. 2005) has held that: " in this case, we assume that counsel's concession of guilt without consultation or consent is deficient. **See Florida v. Nixon,** 543 U.S. 175, 160 L. Ed 2d 565 (2004) (observing that "an attor -ney undoubtedly has a duty to consult with the client regarding 'important decisions,' including questions of overarching defense strategy," and that counsel was obliged to explain pro -posed trail strategy to the defendant)(quoting Strickland,466 U.S. at 688); Strickland, 466 U.S. at 688 (noting counsel's duty to consult with the defendant on important decisions)" Thus, the only question is whether Maka was prejudiced by his counsel's deficient performance.

## Claim (1) Prejudice Under Strickland:

While it is evident that Maka's counsel's conduct was de-ficient, it must be demonstrated that he suffered prejudice as a result of counsel's errors. Maka has to show that there was "a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reason -able probability is a probability sufficient to undermine con-fidence in the outcome." Strickland, 466 U.S. at 694.

Thus, applying the prejudice prong of Strickland, that the strategy used by Maka's trial counsel regarding Counts 24- 36, there is a reasonable probability that the outcome of Maka's trial was affected, as followed:

13

Counsel's concession of Maka's guilt may be an acceptable strategy, however, in conceding Maka's guilt on Counts 24-36 of the indictment, without consulting him and without obtaining his consent to this overarching trial strategy; counsel before the government put on evidence, established for the government that Maka was guilty of those offenses beyond a reasonable doubt, thus lessening the government's burden of proof of persuading the jury of Maka's guilt beyond a reasonable doubt. Also, Maka's counsel prejudice Maka's when he admitted to the jury that he was guilty of document with holding documents. The Constitution requires a criminal conviction to rest upon a jury determination that the defendant is guilty of every element of the crime of which he is charged beyond a reasonable doubt. **United States v. Gaudin,** 515 U.S. 506, 132 L. ed 2d 444 (1995)(citing Suillivan v Louisiana, 508 U.S. 275, 124 L. ed 2d 182 (1993); see also **Court of Ulster Cty. v Allen,** 442 U.S. 140, 156, 60 L. Ed 2d 777, 99 S.Ct. 2213 (1979)("[I]n criminal cases, the ultimate test of any devices' constitutiona; validity in a given case remains constant: the device must not undermine the factfinders' responsibility at trial, based on evidence adduced by  the state , to find the ultimate facts beyond a  reasonable doubt.") " A simple plea of not guilty. Fed. Rule Crim. Proc. R. 11, puts the prosecution to its proof as to all elements of the crime charged ..." **Mathews v. United States,** 485 U.S. 58, 64-65, 99 L. Ed 2d 54, 108 S.Ct. 883 (188).

14

Thus, in evaluating whether Maka was prejudiced this Court
must keep in mind the purpose of opening statement. The purpose
of opening statement " is to state what evidence will be pre -
sented, to make it easier for the jurors to understand what is
to follow, and to relate parts of the evidence and testimony to
the whole; it is not an occasion for argument. to make statements
which will not or cannot be supported by proof, if it relates
to significant elements of the case, professional misconduct."
**United States v. Dinitz,** 424 U.S. 600, 612, 96 S.Ct. 1975, 47
L. Ed 2d 267 (1976) (Chief Justice Burger concurring); see also
**Arizona v. Washington** 434 U.S. 497, 513, n. 32, 98 S.Ct. 824,
54 L. Ed. 2d 717 (1978) (quoting Chief Justice Burger's con-
curring opinion in Dinitz with approval). The opening statement
"should not refer to matters that are not to be presented as
evidence." **United States v Taren_Palma,**997 F 2d 525, 532 (9th
,overruled on other grounds, **United States v Shaban,** 513 U.S.
10, 115 S.Ct. 382, 130 L. Ed 2d 225 (1994).

Maka's cousnel's performance adversely affected his trial
outcome when he conceded Maka's guilt to the offenses Alien
Smuggling and Alier. harboring he effectively told the jury that
before we start Maka is guilty of these charges, thus overruling
Maka's plea of not guilty to these charges.

## Counsel's Deficient Preformance Calim (1a):

(1a) Maka's trial counsel rendered ineffective assistance when
he conceded at trial, during closing argument that Maka was gui-
lty of Alien Smuggling and Alien Harboring, without consulting

15

Maka, prior to the concession, and without Maka's consent to the overarching trial strategy, of conceding his guilt.

During closing argument, Maka' attorney conceded he was guilty of Alien Smuggling and Alien Harboring, without consult -ing him, and without Maka's consent. Thus, conceding a defendant -'s guilt to a multi-count indictment is a valid defense strat- egy, the manner of its execution in this case, rendered Maka's counsel's performance deficient. **Strickland** imposes few re- quirements on attorneys, but one it specifically enumerates is "to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution?" **Strickland,** 466 U.S. at 688. Such consultation is an ethical cornstone of the legal profession." Infra. 8. Without any indication in the records before this court, as to whether Maka agreed to, dissented from, or even was aware of his attorney's plan to concede his guilt, the question is was Maka's counsel's performance deficient? The Ninth Circuit , in **United States v. Thomas,** 417 F.3d 1053 (9th Cir. 2005) has held that: " in this case, we assume that counsel's concession of guilt without consultation or consent is deficient." thus, the Ninth Circuit has made clear that where counsel has failed to obtain a defendant's consent and consult with the defendant before conceding his guilt constitutes deficient performance. See also, **Florida v. Nixon, supra.**

16

## Claim (1a) Prejudice:

Maka's trial counsel's performance adversely affected the outcome of his trial because when he conceded Maka's guilt to Counts 30-35 Alien Harboring, he also conceded Maka's guilt to Counts 1-6 Human Trafficking. For example: Maka's trial counsel argued to the jury stating the following: " I'm going to tell you, ladies and gentlements, find Mr. Maka guilty of smuggling. He's guilty of smuggling. He's guilty of harboring aliens..." (Tr. p. 74: Dated: 12/07/04). Before Maka's trial counsel closed his arguments he told the jury that:"You are judges of the facts. I trust that after careful deliberation that you will do the right thing here. You will find Mr. Maka guilty of what he's guilty of: **smuggling and alien harboring.** But as, far as involuntary servitude, forced labor, human traf- ficking, and even **documents** involving that because in order  to convict him of that particular charges, you got to find  that these things occurred either one of these." (Tr.pp. 90-91:Dated: 12/07/04)

In this argument, Maka's counsel tells the jury that Maka is not guilty of  **document misconduct**, however, contrary to this argument Maka's counsel **conceded his guilt to the offenses of document misconduct in his opening statement when he told the jury:"You will hear evidence of alien smuggling, and you will hear evidence of documents being held."** These arguments are at odd with one another, but it can only be assumed that the jury

17

convicted after hearing the opening statement.

For the government to have obtained a conviction on Counts
1-6 Human Trafficking, as the district court so instructed the
jury" In considering the offenses charged in Counts 1-6, you may
not find the defendant guilty as to any of those counts, unless
all of the following are proved  beyond a reasonable doubt as
to that count:(Tr. p. 16:Dated: 12/07/04).

First, that the defendant did recruit, **harbored**, transport,
provide, or obtain the person named for labor or serivices;

Second, that such labor or services were to be obtained or
manitained in violation of the laws against involuntary servitude
or force labor; and

Third, that the defendant acted knowingly.(Tr.p.17: 12/07/04)

The district court, instructed the jury regarding Counts 30-
35 Alien Harboring, the counts that his trial counsel conceded to
the jury, in relevant part:"... the defendant, knowing that an
alien had come to, entered, or remained in the United States in
violation of law, did conceal, **harbor**, or shield from detection
such alien in any place."

Thus, the government in proving its case it was required to
prove that Maka concealed, **harbored**, or shielde from detection
those persons alleged in each count. Maka's trial counsel's
admission of his guilt to the jury on Counts 30-35 Alien Harbor-
ing, also admitted to the jury the essential element to the off-
ense of Human Trafficking, and that element is **harbored**, thus,
Maka's defensed concerning the more serious offense was clearly

18

undermined. In no wise, could the jury find Maka **not guilty** of Human Trafficking, after his trial counsel told them Maka was guilty of Alien Harboring, and this is more true when it is assumed that the jury followed the court's instruction in reach -ing their verdict, that is, to say if the jury was instructed that they had to find Maka guilty of harboring to convict on Trafficking Humans then ..when his trial counsel told the jury that he was guilty of alien harboring they also  was told that Maka was guilty of Human Trafficking.

## Counsel's deficient performance Claim (2):

B).   **Maka's trial counsel rendered ineffective assistance when he conceded Maka's guilt to the offense of Conspiracy, during-- closing argument, an offense of which he is charged    with and charge that he was not given Notice of.**

### RELEVANT FACTS

On Dec. 7, 2007, Maka's trial counsel had closing arguments , and again, during his closing arguments not only did he admit Maka's guilt to Counts 30-35, and Alien Sumggling, but Maka's trial counsel told the jury that Maka was guilty also for the offense of **Conspiracy** when he argued to the jury and said: " I'm going to tell you, ladies and gentlement, find Mr. Maka guilty of smuggling. He's guilty of smuggling. He's guilty of harboring aliens. **But if you want to look at the real picture that we have here, this is it: It's a conspiracy to bring people in from Tonga , which Mr. Maka was involved with,.."** (Tr.p. 74: Dated: 12/07/04)

Maka's counsel did not just make a mistake, he continued to tell the jury that Maka was guilty of Conspiracy when he said: "**Now, what you see is a conspiracy..**"(Tr. p. 75:Dated:12/07/04. And, thirdly, Maka's counsel tells the jury again that:

19

"If you look at the **conspiracy** that we have, we have a
whole bunch of law violates. Okay? And what they're doing is
they're violating the immigration laws of the United States
, from Mr. Maka on through everyone else who was part of this."
(Tr. p. 76:Dated:12/07/04).

Maka's trial counsel's performance, here is constitutionally
deficient, not only did he admit to the jury that Maka was
guilty of the Alien Smuggling and Alien Harboring offenses,but
he conceded Maka's guilt to have been charged with federal con-
spiracy offenses, charges that was not before the court and the
jury had been instructed on by the district court. And for the
most part  Maka was not given Notice of this charge(s) against
him.

## Claim (2) Prejudice:

Maka was prejudiced by his counsel's admitting to the jury
an extraneous offense(s) that influenced their verdict of guilt
of the offenses of Human Trafficking, Forced Labor,and Document
Misconduct, it is extremely difficult for the jurors to have
igonred Maka's trial counsel conceding that Maka was involved
in a conspiracy to bring people to the United States."In
general, an attorney may not inject into his argument any extri-
nsic or prejudicial matter that has no basis in the evidence.

<u>Counsel's deficient performance Claim (3):</u>

C). **Maka's trial counsel rendered ineffective assistance when he in effect constructively amended the charging indict - ment, whereas, on three(3) occasions he argued to the jury that Maka was charged and guilty of Conspiracy to Smuggle, Conspiracy to Harbor aliens,and Document Misconduct.**

<u>RELEVANT FACTS</u>

During Maka's trial counsel's closing argument he on three occasions told the jury that Maka was guilty of a conspiracy , a charge of which he was not indicted for, and was not given notice of.Counsel's argument was as follows:

> " I'm going to tell you, ladies and gentlemen, find Mr. Maka guilty of smuggling. He's guilty of smuggling . He's guilty of harboring aliens. But if you want to look at the **real picture** that we have here,this is it: **It's a conspiracy to bring people in from tonga, which Mr. Maka was involved with,** so that they could come here and work, send money back home." (Tr. p.74:Dated 12/07/04).

> **"Now, what you see is a conspiracy,..."**(Tr.p.75:Dated: 12/07/04).
> **"If you look at the conspiracy that we have, we have a whole bunch of law violators.** Okay? And what they're doing is they're violating the immigration laws of the United States, from  **Mr. Maka on through everyone else who was part of this"**(Tr.p. 76:Dated: 12/07/04).

Maka's trial counsel arguments here are constitutionally deficient because they constitutes a constructive amendment to the indictment, it allowed the jury to find Maka guilty of Conspiracy to Smuggling Aliens, Conspiracy to Harboring Aliens, and Conspiracy of Document Misconduct.

21

The Fifth Amendment's Grand Jury Clause endows defendant's who are charged with felonies with a substantial right to be tried only on the charges set forth in an indictment by a grand jury. See **United States v. Stirone,** 361 U.S. 212 (1960). The Ninth Circuit has held in **United States v. Von Stoll,** 726 F. 2d 584 (9th Cir. 1984) ("An amendment of the indictment occurs when the charging terms of the indictment are altered, either literally or in effect, by the prosecutor or a court after the grand jury has passed upon them.").

In the case at bar, it was Maka's trial counsel, who in effect constructively amended the indictment, rather than, the government, thus, if it is error for the court or the government to constructively amend the indictment, it too, is error for Maka's trial counsel's to do so, as well.

## Claim (3) Prejudice:

Maka's indictment alleges that he committed the offenses of Alien Smuggling, Alien Harboring, and Document Misconduct.

1). Counts 24 through 29 and 36 of the indictment charges Maka with individual offenses of Alien Smuggling, that the defendant, knowing that a person was an alien and had not received prior official authorization to enter the Unite States with the intent to violate United States immigration laws, and did so for the purpose of commerical advantage or private financial gain.

2). Counts 30 through 35 of the indictment charges that Maka, knowing that an alien had come to, entered, or  ⸗mained in the United States in violation of law, did conceal, harbor, or

22

shield from detection such  alien in any place.

   3). Counts 7 through 11 of the indictment charge  Maka with
unlawful conduct with respect to :the identification or immigra-
tion documents of Salesi Mahe, Francis Jonathan Tautua'a, Inoke
Taufalele, Tukutau Tupouata, and Taufa Aho, respectively, in
furtehrance of human trafficking, involuntary servitdue, or
forced labor.

   In order for Maka to be involved with or charged with con-
piracy to harbor aliens he would have to be charged with a viola-
tion of 18 U.S.C. Sec. 371, also, in order for Maka to be involved
with or charged with conspiracy to smuggl aliens he would have to
be charged with a violation of 18 U.S.C. Sec. 371, and the same
goes for conspiracy of Document Misconduct.

   Testimony and evidence presented at Maka's trial imports that
Maka is the sold defendant of the charges in each counts. Maka
has been prejudiced by his trial  counsel's constructively amend-
ing the charges , in telling the jury that Maka was guilty of
conspiracy to  committ the substantive offenses, where the evidence,
also supports the charges Conspiracy to Smuggle Aliens, Conspiracy
to Harbor Aliens, and Conspiracy of Document Misconduct.

   In  **United States v. Floresca**, 38 F.3d 706 (4th Cir. 1994)
(en banc), the Floresca Court held that: "...a constructive
amendment to an indictment occurs when either the government (
usually during its presentation of evidence and/or its argument)
the court (usually through its instructions to the jury), or
both, broadens the possible bases for conviction beyond those

presented by the grand jury." Floresca, 38 F3d at 710. In **United States v. Shipsey**, 190 F3d 1081 (9th Cir. 1999), the Ninth Circuit quoted Floresca with approval.

## Counsel's deficient performance Claim(4):

D). **Maka's trial counsel rendered ineffective assistance when he waived Maka's statutory and constitutional right to have a certified interpreter during a critical stage of his trial**

### Relevant Facts

On Jan. 10, 2005, the Court recevied a letter from a juror , Roy Tanaka, that he was unable toserve as a juror because of a sinus infection. Therefore, an alternate juror had to be selected.

Mr. Shipley, informed the Court that before the jury be given instruction to restart deliberation, that Maka needed to be there. Mr. Shipley let it be known to the Court that Maka's trial counsel could not say go ahead without consulting Maka. (tr.p.3:dated: 01/10/05).

The Court ordered that Maka be brought into the courtroom, and the following exchange occurred:

THE COURT: Okay.

And the interpreter is not here.

MR. DOMINGO: You Honor, we will **waive having an interpreter for this stage.** Mr Maka and I spoke in English. He under-stands that a juror is ill, will not be able to come back until the 23rd. He wishes that the proceedings go on, and that alternate replace that juror.

24

THE COURT: Okay. Is that right?

THE DEFENDANT: Yes.

THE COURT: Okay, you can sit down for now.

Okay, now, you understand, of course, that if we replace a juror
with an alternate, then I have to instruct the jurors to start
their deliberations over? So it would be as (Tr.p.5) if we just
finished the second phase of this case, the sentencing trial,
and they were going out again; they have to redo their deliber-
ations so the new person can be included in everything that the
jury discussed. Do you understand?

THE DEFENDANT: Yes. (tr.p.6;Dated:01/10/05)

## Discussion:

Title 28 U.S.C. Section (f)(1) provides in full that:

> "Any individual other than a witness who is entitled
> to interpretation under subsection (d) of this sect-
> ion may waive such interpretation in whole or in part
> . Such a waiver shall be effective only if approved
> by the presiding judicial officer and made expressly
> by such individual on the record **after opportunity--
> to consult with counsel and after the presiding off-
> icer has explained to such individual,utilizing  the
> services of the most available certified interpreter
> ,or when no certified interpreter is reasonable avail
> -able, as determined by the presiding judicial officer
> , the services of an otherwise competent interpreter,
> the nature and effect of the waiver.**

Waiver of interpreter is not decision for defendant's cou-
nsel or court to make; it is defendant's decision, after court
explain to him nature and effect of waiver. **United States v.
Osuna**, 189 F. 3d 1289 (10th Cir. 1999).

25

It has been held that a defendant's trial counsel cannot waive for his client the right to have an interpreter, and it is the court's duty to ensure that the defendant understands the effect of the waiver, and the nature thereof. Thus, Maka's trial counsel's preformance was deficient when he waived Maka's right to have an interpreter present during a critical stage of his trial. It is quite clear that Maka and his attorney spoke two different languages, it is hard to believe that Maka understood what his trial counsel had explained to him, and understood the nature and effects of his trial counsel waiver of his statutory and constitutional right to have an interpreter present.

## Claim (4) Prejudice:

Maka was prejudiced by his trial counsel waivers, had Maka understood that he could have proceeded without 12 jurors and or he could have waited until the 23rd, he might have done so. Also Maka's trial counsel prejudiced his right to a fair proceeding, when waived his right to have an interpreter present during the proceeding. Maka is not, and was not fluent in English to clearly understands what the proceeding was about and the effect of his trial counsel's waiver of an interpreter.

B

## GROUND OF ERROR TWO

Maka did not knowingly and voluntarily waive his right to have an interpreter present during critical stages of his trial, thus, the district court violated his Fifth Amendment right to Due Process, when it accepted Maka's trial waiver of an interpreter/and Maka's statement that he wanted to proceed without an interpreter, without first making a determination that Maka knowingly and voluntar - ily waived his right to have an interpreter present.

26

## Relevant Facts

On January 10, 2005, the following occurred during Maka's trial. The court allowed Maka to undergo the follwing proceedings without making a determination whether he knowingly and voluntarily waived his right to have an interpreter present during these proceedings.

MR. DOMINGO: Good morning, Your Honor.

Let the record reflect the presence of Lueleni Fatangi Maka, along with assistant federal defender William Domingo.

THE COURT: Okay.

And the interpreter is not here.

MR DOMINGO: Your Honor, we will waive having an interpreter for this stage.Mr Maka and I spoke in English. He understands that a juror is ill, will not be able to come back until the 23rd. He wishes that the proceedings go on, and that an alternate replace that juror.

THE COURT: Okay. Is that right?

THE DEFENDANT: Yes.

THE COURT: okay, you can sit down for now.

Okay, now, you understand, of coutse, that if we replace a juror with an alternate, then I have to instruct the jurors to start their deliberations over? So it would be as (Tr. p. 5; Dated: 01/01/05).

if we just finished the second phase of this case, the
sentencing trial, and they were going out again; they have to
redo their deliberations so the new person can be included in
everything that the jury discussed. Do you understand?

       THE DEFENDANT: Yes.

       THE COURT: Okay.

       Then let's gon and get the alternate on the line and
see if we can make sure-- (Tr.p.6:Dated: 01/10/05).

    This was the first event that occurred where Maka did not
an interpreter present, and the Court did not make a determina-
tion whether Maka knowingly and voluntarily waived his right to
an interpreter.

    The second event occurred on January 12, 2005, and the fol-
lowing proceedings were held in open court out of the presence
of the jury:

       THE COURT: Yeah. Okay. So we'll go on the record at
10:30 then. He's right downstairs, right?

       MR DOMINGO: Let me see if I can get ahold of--

       THE COURT: Ms. Tiedemann.

       MR. DOMINGO: Yeah. 10:30.

       THE COURT: Okay. We're resuming our conference that
we had earlier this morning by telephone. We're now in person.
And we have Mr. Maka here. We do not have Ms. Tiedemann, the
interpreter.

       Are you prepared to go forward with out her? We can
certainly wait to get her.

THE DEFENDANT: (In English) Sure, okay. Can go ahead.

THE COURT: You can go ahead. Okay. If at any time (Tr.p.11:Dated;01/12/05)
to you feel you need the interpreter because you're having a hard time understanding, then let Mr. Domingo know and we'll stop. Okay.

THE DEFENDANT: (in English) Okay.

THE COURT: Okay. You can sit down. I'm sure that Mr. Domingo-- you can all sit down. Yeah. We'll just leave your  appearance on from this morning.

All right. So what happened, I', sure Mr. Domingo has told you, Mr. Maka, is that today the United States Supreme Court gave us some decisions. These decisions say that this sentencing jury that we have that is now considering some of the things that may affect your sentence is not required by law. So, we could let the jury go home and not finish the work it's now in the middle of.

However, the lawyers on both sides have told me that they think it's a good idea to let the jury go ahead and give us  its decision, but the decision will simply be information for me. It will not-- I'm not required to follow the jury's decision on whether you're guilty or not is tha law in this case, but whatever the jury tells us about these sentencing issues ,it'll be some information we can all look at, but we won't have to follow it. (Tr.p.12; Dated: 01/12/05).

29

Is that okay with you to do it that way and have the
jury go ahead and give us that information? (Tr.p.12:01/12/05).

THE DEFENDANT: (In English) Yes.

THE COURT: Okay. You understand what I said?

THE DEFENDANT: (In English) Yes.

THE COURT: Okay. Because the alternative is to let
the jury go home and then I'll figure out without this informa-
tion from the jury what sentence to give you. Do you
understand?

THE DEFENDANT: (In English) Yes.

THE COURT: Okay. But you want the jury to go ahead
and give us its response to the questions we've asked?

THE DEFENDANT: (In English) Yes.

THE COURT: Okay. Then that's what's going to happen
and the jury will deliberate and we'll call you back.

Just so you know, we're thinking that the jury is
shortly going to give us a question. The reason we say that
is, there was a flurry at the end of the day where the bailiff
told us: I think there might be a question, but it was the end
of the day and so then he came back and siad: No, no question
right now. So we thought maybe the jury just decided that at
the end of the day they might hold the  question. But we'll see.
I mean they have to give it to us in writing. So if they have a
question, they'll put it in writing, but it may come very soon
because it may be that the jurors were considering asking a
question but decided not to do so at the end of tha day and
saved it for the morning. Okay? (Tr.p.13:01/12/05).

30

The determination whether a defendant needs an interpreter is likely to hinge upon various factors, including the complexity of the issues and testimony presented during trial and the **language ability of the defendant's counsel.** See id., **United States vs. Si,** 333 F3d 1041 (9th Cir. 2003).

In both instances, where the interpreter was not present during a proceeding the Court did not at any time make a determination on record whether Maka knowingly and voluntarily waived his to an interpreter. The Court    should have determined the validity of Maka's waivers. See id. **United States vs. Tapia,** 631 F2d 1207 (5th Cir. 1980); **United States v. Osuna,** 189 F3d 1289 (10th Cir. 1999).

Maka case should be remanded to district   court to make a determination whether Maka knowingly and voluntarily waived his right to an interpreter, and for the court to make on the records finding that  whether Maka's language difficulties did not inhibit his capacity to understand and communicate with the court and his trial counsel, during visits Maka did not have an interpreter with him, while his trial counsel discussed his defense.

## C.
## GROUND OF ERROR (3)

C).  MAKA'S TRIAL WAS FUNDAMENTALLY UNFAIR, IN VIOLATION OF HIS RIGHT TO DUE PROCESS OF LAW; VIOLATIVE OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION; WHEREAS THE DIS - TRICT COURT FOUND COUNTS 18 TO 23 FORCED LABOR TO BE MULTI -PLICIOUS TO COUNTS 12 TO 17-INVOLUNTARY SERVITUDE, AFTER THE JURY FOUND MAKA GUILTY OF COUNTS 18 TO 23: THUS, THE-- JURY COULD EASILY HAVE BEEN PREJUDICED BY THE GOVERNMENT'S INFLATED VIEW OF MAKA'S WRONGDOING CAUSED BY INCLUDING COUNTS 18 TO 23 FORCED LABOR, IN THE INDICTMENT.

## RELEVANT FACTS

In the case at bar, the government charged Maka with a 36 Count Indictment. Counts 12 through 17 of the indictment charges Maka with a violation of Title 18 U.S.C. Sec. 1584-Involuntary Servitude, and the district court judge at (Tr.pp.5-13: Dated: 12/07/04) instructed the jury on these charges.

In counts 18 through 23 of the indictment, the government charged Maka with a violation of Title 18 U.S.C. Sec. 1589-Forced Labor, and the district judge instructed the jury as follows:

"Counts 18 through 23 of the indictment charge the defendant with obtaining the labor or services of Salesi Mahe,Francis Jonathan Tautua'a, Inoke Taufalele, Pita Ma'u, Tukutan Tupouafa, and Taufa Aho, respectively, by use of threats of serious harm to or physical restraint against them, or against another person." (Tr.p.13: Dated 12/07/04).

"Counts 7 through 11 of the indictment charge the defendant with unlawful conduct with respect to the identification or immigration documents of Salesi Mahe, Francis Jonathan Tautua'a, Inoke Taufalele, Tukutau Tupouata, and Taufa Aho, respectively, **in furtherance of human trafficking,involuntary servitude, or forced labor.**" (Tr.p.17 :dated : 12/07/04).

The district judge went on to instruct the jury stating that : " You should consider the instructions that I gave you pretaining to human trafficking, involuntary servitude, and forced labor when you consider this element of document misconduct.(Tr.pp.18-19: Dated: 12/07/04).

32

THE COURT: Okay. We'll go back on the record.

Let's first look at defendant's multiplicity argument and see it we can resolve  guideline issues.

I've read the memos. I think the easiest way to proceed is for me to give you a preliminary idea of how I'm thinking, and then I'll invite argument.

So, preliminarily, I will say that I have a concern about the forced labor convictions. Now, clearly, dismissing counts in the indictment is not an ption for the defense. It's an untimely thing to do once we've gone throogh trial. But I am concerned about whther I can sentence for the forced labor convictions because it may well be that those are multiplicitous of either the human trafficking convictions or the involuntary servitude convctions.

The others, it seems to me, clearly have different elements. This may not make a substantive difference in what the sentence is because, if I did sentence on the forced labor convictions, it is highly likely i' would have  run any sentence on such counts, which is counts 18 through 23, concurrently with sentences on other counts, but let me explain what my concern is.

Okay. So, first, if we look at the human trafficking counts-- and those are counts 1 through 6-- those require proof beyond a reasonable doubt that the (Sent. Tr. p. 51:Dated: 04/28/06). defendant recruited, habored, transported,provided, or obtained a person for labor or services and that the labor  or

33

services were to be obtained or maintained in violation of laws
against involuntary servitude or forced labor and that the
defendant acted knowingly.

And it doesn't actually seem to me that the elements
of human trafficking require putting someone to work for a term.
Instead, it's getting the people in for the purpose of working.
And so it seems to me that the human trafficking counts dod not
have identical elements with the other counts.

When I turn to counts 7,8, and 11, those are the unlaw-
ful conduct with respect to identification or immigration docu-
emtns. Those have clearly separable requirments. The defendant
has to have destoryed, concealed, removed, confiscated, or
possessed a passport or immigration document or government I.D.,
and the activity has to have occurred in the course of violating
laws against **human trafficking, involuntary servitude, or false
labor, and the defendant has to have acted knowingly.**

Counts 1 through 6 on huma' trafficking do not have this
element of requiring anything to do with the passport,immigration
document, or other I.D.; so it seems to me counts 7,8, and 11
concerning identification or (Tr.p.52:Dated: 04/28/06) immigrat-
ion documents are separable from counts 1 through 6, the human
trafficking, those are not multiplicitous.

If I look at counts 12 through 17 --those are the in-
vloumtary servitude counts--those require the holding of a person
in a condition of involuntary servitude for a term, and the
defenant must have acted knowingly and willfully. So the holding
and the need for the existence of aterm are not elements required
in the human trafficking alleged in counts 1 through 6, nor in

34

the immigration passport and i.D. document counts 7,8, and 11;
so it seems to me there's no multiplicity there.

When I get to counts 18 to 23, the forced labor counts,
those require that the defendant obtain the labor or services of
the person named through threats of serious harm to or physical
restrain against that person or another person, or through a
scheme, plan, or pattern intended to cause the person to be-
lieve that nonperformance would result in serious harm to or
physical restraint against that person or another person.

And that's where I'm concerned about overlap because
involuntary servitude means holding soemone in a condition of
compulsory service in which the victim is compelled to perform
labor or services against the victim's will for the benefit of
someone else as a result (Tr.p.53:Dated: 04/28/06) of the use of
--the use or threat of physical restraint or physical injury or
by use or threat of coercion through law or the legal process.

So when we get to this idea of physical restraint or
physical injury, it seems to me that there's the potential for
overlap. Clearly, the involuntary servitude and the forced labor
statues do indeed have factual possibilities where certain facts
would violate the forced labor but not the involuntary servitude
statutes or vice versa, but there is enough overlap that arguably
in certain cases the elements would be identical and satisfy
both violations. So I am concerned about possible multiplicity
there.

35

But, as I say, I don't foresee that this has a substantive
impact on the actual sentence. It's just that I may be precluded
from sentencing for counts 18 to 23 if I sentence on counts 12
through 17 to avoid multiplicitous sentencing.

Now, as I already indictaed, the other counts, 24 through 29
and 36 and 30 to 35, do not seem to me to have anything close to
the multiplicity issue. Those counts arise, in fact, under a
different title of the United States Code-- they arise under
Title 8; the others arose under Title 18-- and they clearly re-
quire that the defendnt have know that people were aliens, which
is an (Tr.p. 54;Dated:04/28/06) element not present in any of the
other counts. It's not a necessary element. In other words, all
the other charges could have involved U.S. citizens only and still
have proceeded. So this is a clearly separable issue.

So, to me, the only ones that I have this concern about are
the forced labor convictions, if I go ahead and sentence on the
involuntary servitude and human trafficking convictions. So I
open it up for discussion.

Mr. Edwards, this is your objection. So let me allow
you to go first.

MR. EDWARDS: I'll stand on the papers. I can't concede
any of the issues raised, Judge, but I agree with you regarding
the multiplicity of the 1589 charge with either 1584 or 1590.

I recall from the other case, which we had under these
statutes, that the government's evidence was, in fact, under the

36

involuntary servitude, the same evidence as is being offered to support the 1589 counts in this case, the holding passports and so forth.

⁎⁎ THE COURT: Okay. The overlap of the evidence is not of such concern to me as the elements.

⁎⁎MR EWARDS: Well, that's what you have to pay attention to; it's what the elements require. And the elements of one are clearly what's reuired to prove involuntary servitude or trafficking. (Tr.p. 55:Dated: 04/28/06).

⁎⁎ THE COURT: I can foresee in which the evidence would pick out-- you see, in both of those statutes, especially in the forced labor statute, you can satisfy an element in different ways. You could, for example, threaten legal process--

MR EDWARDS: Right.

THE COURT:-- in the forced labor statute, which is not mentioned in the involuntary servitude elements.

MR EDWARDS: But it's what the case law says you can use in voluntary servitude.

⁎⁎ THE COURT: Right. Right. And also, when we do look at the evidence and how the evidence plugs in to the evidence in this case, then I think you've made a point--a valid point there.

MR. EDWARDS: And I understand that it may make no difference substantively in the way you sentence, but it is a legal issue that "ve had to raise.

THE COURT: Okay. Mr. Shipley, would you like to be heard on this?

37

MR SHIPLEY: Well, I think that the court's concern really kind of touches on the issue that's resolved by Nash, which is that the court shouldn't look at the trial evidence and be concerned that ethe trial evidence satisfy--the same trial evidence satisfies both (Tr.p.56: Dated: 04/28/07) statutes.

THE COURT: It doesn't matter to me, except that I see that the elements overlap. And so then the only reason that I mentioned the trial evidence is because I'm saying I can conceive of ways tha', even though the elements overlap in particlar cases, because there are some alternatives to satisfying an element, that the government would have available to it the argument that the elements appear to overlap but we used alternative 1 for a certain crime, which doesn't apply to the other allegedly multi-licitous charges, and so there is not actually multiplicity. And that's why I mention it. But the elements have, it seems to me, some overlap, and I am concerned about that.

MR. SHIPLEY: I think probably at least the most simpl-istic way to undrstand this, which is that way that works the best in my brain, is simply to say that can you imagine ever having a conviction for involuntary servitude that would not under the facts of that conviction also establish conviction for forced labor? I mean is there any circumstanceunder which that wouldn't happen. Do the satisfaction of the involuntary servitude elements also by necessity satisfy the forced labor?

THE COURT: And what's your answer?

MR. SHIPLEY: I don't think so, and I think (Tr.p.57: Dated:04/28/07).

that's true for a couple of reasons. that there are circumstances
under which the imposition of -- the imposition of harm-- well,
I guess, you know, it is--it is conundrum because the imposit-
ion of physical harm against the person who is the subject of
the labor or services demand would certainly satisfy the first
means under the forced labor statute, which is threat of serious
harm to or physical restaint against.

       THE COURT: Yes. That was my concern.

       MR. SHIPLEY: So-- and--

       THE COURT: It seems to me safest if I don't sentence
on counts-- the forced labor counts.

       MR. SHIPLEY: Where the forced labor count is duplicated
by an involuntary servitude count.

       THE COURT: I mean, I think--as I say, i don't--I think
Mr. Edwards is correctly recognizing it may not make a difference
in the sentence. I don't know why the government wants to invite
this avenue of challenge.

       MR. SHIPLEY: No, I certainly recognize that just for
purposes of avoiding an appellate issue on an uncertain subject
in a circumstance where it has no practical implication. I guess
I certainly am sympathetic with the court's view. Frankly, I
can't, as I stand here today, articulate a basis under which you
could get a (Sent. Tr. p.58:Dated:04/28/06) conviction under the
involuntary servitude statute but get an acquittal under the
forced labor statute on the same facts.

THE COURT: Right.

MR. SHIPLEY: So I guess i don't at this point see any
reason why the court should invite that error by looking past
this multiplicity claim, and it may be better resolved under dif
-ferent circumstances under different facts.

THE COURT: Okay. well, then, the objection based on
multiplicity is sustained with respect to counts--

MR. EDWARDS: Your Honor, I believe it's counts 18
through 23. (Sent. Tr.p.59:Dated: 04/28/06).

Maka has been denied a fundamental fair trial, violative of
his Fifth Amendment Due Process right to have a fundamentally
fair trial, whereas the evidence used by the government to prove
Forced Labor, could  easily have prejudiced the jury, by the
government's inflated view of Maka's wrongdoing caused by includ
-ing Counts 18-23.

During Maka's counsel's presentation of the alleged multi-
plicitous issue the district court was not concerned with the
overlapping evidence, but rather the elements to the offenses,
however, the district court and Maka's trial counsel made mention
-ed of the overlapping evidence.

The district court expressed its concerns regarding the mul
-tiplicitous issue, and Mr. Edwards also expressed his view of
the issues, the following occurred:

THE COURT: "...If i look at counts 12:through 17--these
are the involuntary servitude counts--those require the holding
of a person in a condition of involuntary servitude for a term,

40

and the defendant must have acted knowingly and willfully. So the
holding and the need for the existence of a term are not elements
required in the human trafficking alleged in Counts 1 through 6
, nor in the immigration passport and I.D. document counts 7,8
and 11; so it seems to me there's no multiplicity there.

When I get to counts 18 to 23, the forced labor counts,those
require that the defendant obtain the labor or services of the
person named through threats of serious harm to or physical
restrain against that person or another person, or through a
scheme, plan, or pattern intended to cause the person to believe
that nonperformance would result is serious harm to or physical
-restraint against that person or another person.

And that's where I'm concerned about overlap because invol-
untary servitude means holding someone in a condition of com-
pulsory service in which the victim is compelled to perform labor
or serives against the victim's will for the benefit of someone
else as a result...(Sent. Tr. p.53:dated: 04/28/06) of the use
of--the use or threat of physical restraint or physical injury
or by use or threat of coercion through law or the legal process.

So when we get to this idea of physical restraint or physical
injury, it seems to me that there's the potential for overlap.
Clearly, the voluntary servitdue and forced labor statutes do
indeed have factual possibilities where certain facts would viol
-ate the forced labor but not the involuntary servitude or vice
versa, but there is enough overlap that arguably in certain cases

41

the elements would be identical and satsify both violations. So
I am concerned about possible multipicity there.

But, as I say, i don't foresee that this has a substantive
impact on the actual sentence. It's just that I may be precluded
from sentencing for counts 18 to 23 if I sentence on counts 12
through 17 to avoid multiplicitous sentencing.

Now, as I already indicated, the other counts, 24 through 29
and 36 and 30 to 35, do not seem to me to have anything close to
the multiplicity issue. Those counts arise, in fact, under a
different title of the United States Code-- they arise under
Title ; the others arose under Title 18--and they clearly require
that the defendant have known that people were aliens, which is
an (Sent. Tr. p.54:Dated: 04/28/06) element not present in any
of the other counts. It's not a necessary element. In other words
, all the other charges could involve U.S. citizens only and
still have proceeded. So this is a clearly separable issue.

So, to me, the only ones that I have this concern about are
the forced labor convictions, if I go ahead ans sentence on the
involuntary servitude and human trafficking convictions. So I
open it up for discussion.

MR. EDWARDS, this is your objection. So let me allow you
to go first.

Maka's trial counsel Mr. Edwards proceeded as follows,point
-ing out to the district court the overlapping of the evidence:

MR. EDWARDS: I'll stand on the papers. I can't concede any
of the issues arosed, Judge, but I agree with you reagarding the

42

the multiplicity of the 1589 charge with either 1584 or 1590.

I recall from the other case, which we had under these stat
-ues, that the government's evidence was, in fact, under  the
involuntary servitude, the same evidence as is being offered to
support the 1589 counts in this case, the holding passports and
so forth.

THE COURT: Okay. The overlap of the evidence is not of such
concern to me as the elements.

MR EDWARDS: Well, that's what you have to pay attention to;
it's what the elements require. And the elements of one are
clearly what's required to prove involuntary servitude or
trafficking. (Sent. Tr.p.55:Dated:04/28/06).

THE COURT: I can foresee cases in which the evidence would
pick out--you see, in both of those statutes, especially  in the
forced labor statute; you can satsify an element in different ways
. You could, for example, threaten legal process--

MR. EDWARDS: Right.

THE COURT:--in the forced labor statute, which is not men-
tioned in the involuntary servitude elements.

MR EDWARDS: But it's what the case law says you can use in
involuntary servitude.

THE COURT: right. Right. And also , when we do look at  the
evidence and how the evidence plugs in to the evidence in this
case, then I think you've made a point--a valid point there.

MR. EDWARDS: And I understand that it may make no differenc
substantively in the way you sentence, but it is a legal issue
that I've had to raise.

43

THE COURT: Okay. Mr. Shipley, would you like to be heard on this?

MR SHIPLEY: Well, I think that the court's concern really kind of touches on the issue that's resolved by Nash, which is that the court shouldn't look at the trial evidence and be concerned that the trial evidence satisfy--the same trial evidence satisfies both (Sent. Tr. p.56: Dated: 04/28/06) statutes.

MR SHIPLEY, clearly point out to the Court tha fact that he could see one getting a conviction under the involuntary servitude statute but get an acquittal under the forced labor statute on the same facts. (Sent. Tr.pp.58-59).

THE COURT: Okay. Well, then, the objection based on multiplicity is sustained with respect to counts--

MR. EDWARDS: Your Honor, I believe it's counts 18 through 23 (Sent. Tr.p.59:Dated: 04/28/06).

Given the concessions by the district court and the government that is, to convict Maka on Counts 12 to 17 Involuntary Servitude, and Counts 18 to 23 Forced Labor is multiplicious, if Maka was sentenced on Counts 18 to 23 Forced Labor. As Mr.Shipley stated:"... **Frankly, I can't, as I stand here today, articulate a basis under which you could get a conviction under the involun -tary servitude statute but get an acquittal under the forced labor statute on the same facts.** (Sent. Tr.pp.58-59). Thus, the district court wholly agreed with the government's view.

44

It is most clear that it is possible that the jury's verdict of guilty on Counts 18 to 23 forced labor influenced the jury to convict Maka on Counts 7-11, Counts 12 to 17, and Counts 1 to 6. As the government conceded it is hard for the jury not to find Maka not guilty of forced labor after the jury has found him guilty of involuntary servitude. In chief, **Mcfarland v. Pickett** 469 F2d 1277,1279 (7th Cir. 1972), the McFarland Court held that:("Petitioner received a sentence of three years on CountIII and two years on CountIV. He could have been given a sentence of five years in prison for a single offense under 18 USC Sec. 924 (a), and the total penalty was thus within the maximum range permitted by law. It is possible, however, that the trial judge was influenced in his sentence by his belief that two offenses rather than one had been committed.").

The **McFarland** Court has held that, when the multiplicity is discovered after the initial sentencing, a resentencing is required since the judge may have been influenced by his erroneous belief that the defendant had committed two offenses, rather than one. Thus, the same rule is applied when multiplcity has been dicovered after the jury found Maka guilty of Counts 12 to 17 and Counts 18 to 23. See e.g., **United States v. Chaney**, 559 F.2d 1094 (7th Cir. 1977). The Chaney Court did not resolve the issue raised by Chaney because a new trial was ordered on another ground. Nonetheless, the Chaney Court held:"... **Therefore, the evidence necessary to prove the offense charged under Count 1 would prove the offense charged under CountII, and vice versa...**

(citation omitted) count I and II of this indictment constitute
the same offense within the meaning of the double jeopardy
clause because they would be proved by identical evidence.There-
fore, defendant's motion to dismiss Count III of the indictment
should have been granted. His counsel urges that in contradis-
tinction to United States v. Tanner, 471 F.2d 128,142 (7th Cir .
9172), cert. denied, 409 U.S. 949, 34 L.ed 2d, 93 S.Ct. 269,
reversal of the conviction imposing concurrent sentence under
invalid Count III would be insufficient here because the jury
could easily have been prejudiced by the Government's inflated
view of defendant's wrongdoing caused by including that Count."
Cf. McFarland v. Pickett, 469 F2d 1277,1279 97th Cir. 1972). Id.
United States v. Chaney, 559 F2d at 1095.

Thus, the government's inclusion of Counts 18 to 23 Forced
Labor in the indictment and the jury finding Maka guilty of
those Counts denied Maka a fundamental fair trial, violative of
his Fifth Amendment right to Due Process because the jury could
easily have been prjudiced by the Government's inflated view
of Maka's wrongdoing caused by including Counts 18 to 23 .

Maka should be granted a new trial on Counts 12 to 17, in-
voluntary servitude, as the Court and the Government has already
said the jury could not have found Maka not of forced labor after
they had found him guilty of involuntary servitude and vice versa.
Maka should be granted a new trial on Counts 7 to 11 because the
district court instructed the jury that in order to convict Maka

46

on Counts 7 to 11 document misconduct the jurors were to consider the instruction the court gave regarding Forced Labor, Human Trafficking and Involuntary Servitude. It is evident that the jury had questions concerning Counts 7 to 11 when it sent out Jury Note 2, concerning the jury instructions on these counts. Further, it is evident that the jury could have been influenced by the invalid Counts 18 to 23 considering the fact the jury sent out Note 3 requesting testimony of Inoke Taufahlele and Kenitoni Tauhlele, and the government dismissed Count 9 of the indictment, after the jury sent out Note 3.

## D.
## GROUND OF ERROR (4)

**THE DISTIRCT COURT ERRED BY ACCEPTING MAKA'S TRIAL COUNSEL'S WAIVER, WAIVING HIS PRESENT DURING CRIT-ICAL STAGES OF HIS TRIAL; WHEREAS UNDER    FEDERAL-RULE OF CRIMINAL PROCEDURE RULE 43 (a) MANDATES--- WITH IT'S USE OF MANDATORY LANGUAGE FOR MAKA    TO HAVE BEEN PRESENCE,UNLESS, MAKA MET THE CIRCUM---- STANCES PURSUANT TO RULE 43(b)(1) &(2); AND (c)(1) ,(2),(3) and (4), OR MAKA KNOWING, VOLUNTARITY AND IN ÷TELLIGENTLY WAIVED HIS DUE PROCESS RIGHT TO    BE PRESENCE, DURING THESE CRITICAL STAGES OF TRIAL.**

## RELEVANT  FACTS

During Maka's trial, on four (4) occasions Maka's trial counsel waived hiss presences to be at stages of his trial, without his knowledge of the proceedings, and the following occurred:

MR. DOMINGO: Good morning, Your Honor. William Domingo on behalf of Lueleni Fetongi Maka, who we ask his presence be waived.

THE COURT: His presence is waived.

Okay. We got the second note from the jury, asking about counts 7 to 11.

And off the record we had a discussion, and the parties are in agreement that there is a problem with matching-- with coordinating the instruction, the statute, and the indictment language, and that can be resolved in several ways. One way would be for the government to dismiss some counts, but Mr. Shipley is not in a position to do that. And instead the parties are agreeing on amending the instruction on page 27 as follows, quote, "Please delete the words' or purported' from the instruction on page 27. U.S. passports under name of persons other than those named in counts 7 to 11 of the indictment are not to be considered as being what the indictment calls the actual passport and other immigration document in counts 7 to 11." (Tr.pp.3-4: Dated: 12/09/04).

Maka's trial counsel seen fit to waive Maka's presence as he saw fit. On Dec. 10, 2004, a hearing was held by the Court regard-ing Jury Note No. 3, and the following occurred:

THE COURT: Okay. Counsel, enter your appearance.

MR. SHIPLEY: William Shipely for the United States.

MR. DOMINGO: Assistance Federal Defender William Domingo on behalf of Mr. Maka. **We waive his presence.**

THE COURT: His presence is waived.

We have note number 3, which we did discuss off the

record. That is a note that requests the portions of the trial

transcript dealing with the testimony of Inoke Taufalele  and

Kenitoni Taufalele. And off the record we discussed letting the

jury know that we would not provide transcripts, but they could

let us know if there was a particular subject.

Now, I've written something out. I'll read it to the lawyers

and see if they're okay with this or they want revisions in the

written respoonse I propose.

Here's what I'm proposing: " the court does not have final

transcripts and will not provide rough drafts of transcripts.

However, if there is aparticular subject (Tr.p.5: Dated:12/10/04)

you are interested in,please let the court know so that it can

determine if a small amount of testimony can be provided."

MR SHIPLEY: " Can be read back"; so they understand they're

not going to get it in writing. The best they're going to get

is to hear it from the court reporter.

THE COURT: Okay. Mr. Domingo.

MR. DOMINGO: i don't know if even I can agree to the reading

. Why don't we just ask them without any promises made as far

as whether or not they can hear or not what is your specific

issue, and then from there we can decide. I mean that's what I

would prefer.

THE COURT: So you want it to say the court does not have

final transcripts, will not provide rough drafts of transcripts

; however, if there is a particular subject you are interested in

, please let the court know.

49

MR. DOMINGO:  Yeah.

MR. SHIPLEY: But that doesn't really address their issue,
which is they want some information back.

MR DOMINGO: Well, if we figure out what kind of information
it is, instead of the whole transcripts, then you can say pro-
bably no; right?

THE COURT: That's why I'm saying I'm not promising.What I
proposed was, if you let me know, then (Tr. p.6:dated:12/10/04)
I can determine.

MR DOMINGO: Okay. Whether or not to allow it.

THE COURT:  Right.

MR. DOMINGO: Okay. I'll go with that, then.

THE COURT: So it's going to read: " The court does not have
final transcripts and will not provide rough drafts of trans-
cripts; however, if there is a particular subject you are inter-
ested in, please let the court know so that it can determine if
a smallamount of testimony can be read back."(Tr.p.7:Dated:12/10/
04).

THE COURT: let's go on the record.

THE CLERK: Criminal 03-84 SOM, United States of America
versus Lueleni Fetongi Maka. This case has been called to address
the Note From The Jury.

Counsel, please make your appearances for the record.

MR SHIPLEY: William Shipley for the United States.

MR. DOMINGO: Assistant Federal Defender William Domingo on
behaft of Mr. Maka.  **We ask his presence be waived.**

THE COURT His presence is waived.

Okay. We have note number 5 from the jury, asking to adjourn because one of the jurors is ill.

Actually, I think we might want to amend this response. So we propose--we discussed this off the record. We propose to re-sponde, "You may adjourn. Please let me know whether you are able to resume deliberations on Monday." I'll add 'rather than Tuesday." Okay?

MR. DOMINGO: That's fine, Your Honor.

MR. SHPIPLEY: That's fine. Now, before we send that back, Your Honor, I'd like to discuss and respond to number 4.

THE COURT: We're going to let them go.

MR. SHIPLEY: But in reviewing the transcripts and discussing with Mr. Seabright the government id dropping count 9. So, if that's the only thing holding them up, they could return a verdict now and then adjourn (Tr.p. 8:Dated:12/10/04) for the day

.    THE COURT: I see. Okay.

So you want to do that,Wilie?

MR. DOMINGO: Okay.

THE COURT: I'll grant the--okay. So the government is moving to dismiss count 9?

MR. SHIPLEY: Correct.

THE COURT: Then I' m granting the motion to dismiss count 9 ,and--

MR. SHIPLEY: Let me conforim that's the count. I think that's the document coutn involving Inoke Taufalele.

Yes. Count 9. (Tr.p.9:dated: 12/10/04).

51

On January 10, 2005, a hearing was held by the Court, and the following occurred:

THE CLERK: Criminal Number 03-84SOM, United States of America versus Lueleni Fatangi Maka.

This case has been called for a telephone conference.

MR. SHIPLEY: Good morning, Your Honor.

William Shipley for the United States.

MR. DOMINGO: Good morning, Your Honor.

Assistant federal defender William Domingo on behalf of Mr. Maka, whose **presence is waived.**

THE COURT: Yes, his presence is waived.(Tr.p.2:01/10/05).

Maka's trial counsel Mr. Domingo, again waived Maka's right to be presence on January 12, 2005, as he gave his appearance for the records, thus stating:

MR. DOMINGO: Good morning, Your Honor. Assistant Federal Defender William Domingo, along with Public Defender Pete Wolff. We are ready. **Waive the presence of my client Your Honor.** (Tr. p. 2: Dated: 01/12/05).

ARGUMENT

**Discussion:**

Rule 43 of the Federal Rule of Criminal Procedure provides in full that:

Rule 43    Defendant's Presence

(a) **When Required.** Unless this rule, Rule 5, or 10 provides otherwise, the defendant **must be present at:**

    (1) the initial appearance, the initial arraignment, and the plea;

    (2) every trial stage, including jury impanelment and the return of the verdict; and

    (3) sentencing.

52

(b) **WHEN NOT REQUIRED.** A defendant need not be present under any of the following circumstances:

(1) Organizaional Defendant. The defendant is an organization represented by counsel who is present.

(2) Misdemeanor Offense is punishable by fine or by imprisonment for not more than one year, or both, and with the defendant's written consent, the court permits arriagnment, plea, trial, and sentencing to occur in the defendant's adsence.

(3) Conference or hearing on a Legal Question. The proceeding involves only a conference or hearing on a question of law.

(4) Sentence Correction. The proceeding involves the correction or reduction of sentence under Rule 35 or 18 U.S.C Section 3582(c).

(c) **Waiving Continued Presence.**

(1) In General. A defendant who was initially present at trial, or who had pleaded guilty or nolo contendere, waives the right to be present under the following circumstances:

(A) when the defendant is voluntarily absent after the trial begun, regardless of whether the court informed the defendant of an obligation to remain during trial;

(B) in a noncapital case, when the defendant is voluntarily absent during sentencing; or

(C) when the court warns the defendant that it will remove the defendant from the courtroom for disruptive behavior, but the defendant persists in conduct that justifies removal from the courtroom.

(2) Waiver's Effect. If the defendant waives the right to be present, the trial may proceed to completion, including the verdict's return and sentencing, during the defendant's absence.

## Analysis of Rule 43 (a) Plain Language:

The plain language of Rule 43 (a) shows that a defendant
must be present **at every trial stage**, whereas Congress uses
the mandatory language must  in defining   the scope of the
rule and when the defendant is required to be present. The
Congress removed from the district judge any discretion to pro-
ceed without a defendant, absent a valid waiver by the defendant.

The language undercuts the defendant's trial counsel or
the court to waive his present at a critical stage of his trial.
This legislative scheme, with its mandtory language and detailed
rerquirements, evidences a clear Congressional intent to take
certain decision making from the court, when it lists the cir-
cumstances under which a defendant may not be present, at his
trial.

## Issue:

With the use of the mandatory language and absent of a
waiver by Maka his Fifth Amendment right to Due Process has been
violated when the Court accepted  his trial counsel's waiver of
his right to be present during the settling of the jury notes.

In **Green v. Bock Laudry Machine Co.**, 490 U.S. 557, 109 S.
Ct. 1981 (1989), the Court held that: " Rule 609(a) that impeach
-ing convictions evidence "shall be admitted". With regard to
subpart (2), which governs  impeachment by crimen falsi convict-
ions, it is widely agreed that this imperative, couple with

54

the absence of any balancing lanuage, bars exercise of judicial discretion pursuant to Rule 403. Subpart (1), concerning felonies, is subject to the same mandatory language;..."Id. 490 U.S. at 525-526.

The records in this case makes clear that Maka did not waive his right to be present during the settling of the jury's notes, thus, Rule 43(a) (2) mandates that Maka be present at this stage of his trial, absent a waiver executed by him. Maka's due process right has been violated by the Court, in this case.

The Rule creates for Maka a **liberty interest** by using mandatory language " the defendant must be present at"... every stage of trial..."unless this rule, Rule 5, or 10 provides otherwise.

The right to be present, pursuant to Rule 43 (a)(2), given its mandatory language is binding upon the district court, unless, otherwise provided by Rule 43, Rule 5, and Rule 10, without any of the listed circumstances, and absent Maka's valid waiver of his right to be presence, the district court was required to enforce Rule 43 (a)(2), and Maka had a legitimate expectation that he would be present during the settling of the jury's notes

Thus, Courts have held that when statutes uses mandatory language, the decision makers are without discretion, to act differently, if a set of requirements are met. In **United States v. Booker,** 160 L. Ed. 2d 621 (2005), the Supreme Court held

55

that the United States Sentencing Guidelines were unconstiutional
because the Commission used  mandatory language which took away
the court's discretion. In **Ramming v. Natural Gas Pipeline Co.,**
390 F3d 366 (5th Cir. 2004), the Court held: ("We conclude that
the district court erred as a matter of law in not entering the
offer of Judgment pursuant to mandatory language of Rule 68,
which explicitly states that the clerk shall enter judgment,");
**United States v. Ortuno-Higareda,** 421 F 3d 917 (9th Cir. 2005).
Where Maka did not waive his present right, it was an err as a
matter of law, thus, violative of Maka's protected liberty
interest to be presence, at every stage of trial. As the Fifth
Circuit held in  **United States v. Alikpo,**  944 F2d 206 (5th Cir.
1991) ("While the right is, as noted, waivable, the ambiguous
statement by the court, "Mr. Todaro says that he is willing to go
ahead if he can, but not finish without him here," and the
defense counsel's more ambiguous response, both made out of
Alikpo's presence, do not suffice to constitute a valid waiver.
The long-standing presumption against waiver of fundamental
rights embodied in Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019
,82 L.Ed 1461 (1938), and the plain language of Rule 43, both
militate against the commencement and continuation of the trial
in light of the defendant's absence." Likewise, Maka's trial
counsel's waiver of his presence does not suffice for a valid
waiver of Maka's right to be presence.

56

Therefore, this COurt should hold that Maka's Due Process liberty interest right to be present has been violated, absent of any of the exceptions mentioned in Rule 43, and a valid waiver entered by him.

Conclusion

This Court should reverse and remand this case  for a new trial.

Date executed: ___1 — 8 — ___,2008.


Lueleni F. Maka, Pro-Se
Reg. No. 90129-022
FCI-Institution-II
P.O. Box 5700
Adelanto, CA 92301

57