CORRESPONDENCE

| MESSAGE CONFIRMATION | AUG-08-2008 02:47 PM FRI |
|---|---|

FAX NUMBER : 808 541 1724
NAME : US DISTRICT COURT

NAME/NUMBER : 917605305792
PAGE : 17
START TIME : AUG-08-2008 02:45PM FRI
ELAPSED TIME : 02'20"
MODE : STD ECM
RESULTS : [ O.K ]



**CHAMBERS OF JUDGE SUSAN OKI MOLLWAY**
United States District Court
300 Ala Moana Boulevard, Room C409, Honolulu, Hawaii 96850-0409
Telephone No. (808) 541-1720   Facsimile No. (808) 541-1724

DATE: August 8, 2008

TO: Case Manager: Ms. Napoleon
**(for delivery to inmate Lueleni Maka #90129-022**
FCI Victorville Medium II
Ph.: 760-530-5700     Fax: 760-530-5792

FROM: Joni Gross, secretary to Judge Susan Oki Mollway

PAGES: __17__ including this page

RE: United States v. Maka; Cr. 03-00084

SENDING: **Order Denying Petition Under 28 U.S.C. § 2255.**

COMMENTS: **For Mr. Maka's information regarding the cancellation of the hearing on Monday, August 11, 2008.**

THIS MESSAGE IS INTENDED FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL, AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING THE MESSAGE TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THE THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE, AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE. THANK YOU.

```
              IN THE UNITED STATES DISTRICT COURT

                   FOR THE DISTRICT OF HAWAII

UNITED STATES OF AMERICA,        )   Cr. No. 03-00084 SOM
                                 )   Civ. No. 08-00024 SOM/KSC
     Plaintiff-Respondent,       )
                                 )   ORDER DENYING PETITION UNDER
     vs.                         )   28 U.S.C. § 2255
                                 )
LUELENI FETONGI MAKA,            )
                                 )
     Defendant-Petitioner.       )
_____)
```

ORDER DENYING PETITION UNDER 28 U.S.C. § 2255

I.      INTRODUCTION.

Lueleni Fetongi Maka was charged with various offenses in a Third Superseding Indictment. See Third Superseding Indictment (Nov. 4, 2004). After twelve days of trial and five days of jury deliberations, Maka was convicted of six counts of human trafficking with respect to involuntary servitude and forced labor (Counts 1-6), three counts of unlawful conduct with documents in furtherance of trafficking, involuntary servitude, and forced labor (Counts 7, 8, 11), six counts of involuntary servitude (Counts 12-17), six counts of forced labor (Counts 18-23), seven counts of alien smuggling (Counts 24-29, 36), and six counts of alien harboring (Counts 30-35). The jury acquitted Maka of Count 10, which charged certain specific instances of unlawful conduct with documents in furtherance of trafficking, involuntary servitude, and forced labor. See Verdict (Dec. 14, 2004). The Government moved to dismiss Count 9 on December 22,

2004. See Government's Motion to Dismiss Count 9 of the Third Superseding Indictment and Order (Dec. 22, 2004). That motion was granted. Id.

After additional evidence and arguments in a sentencing phase of the trial, the jury deliberated another seven days before reaching its verdict. See Verdict (January 12, 2005).

On April 28 and May 8, 2006, Maka was sentenced to a prison term totaling twenty-six years. This term consisted of twenty years as to Counts 1-6 and 12-17, with the terms running concurrently with each other; five years as to Counts 7, 8, and 11, with the terms running concurrently with each other and with all other counts; and six years as to Counts 24-29 and 30-36, with the terms running concurrently with each other and with Counts 7, 8, and 11, but consecutively to Counts 1-6 and 12-17. The court declined to sentence Maka on the six counts of forced labor (Counts 18-23), determining those counts to have been multiplicitous. See Judgment in a Criminal Case (May 11, 2006).

Maka appealed this judgment of conviction to the Ninth Circuit Court of Appeals. See Amended Notice of Appeal (May 16, 2006). In an unpublished decision, the Ninth Circuit affirmed in part, vacated in part, and remanded the case. The Ninth Circuit agreed with this court that the human trafficking counts were not multiplicitous of the involuntary servitude counts or of the alien smuggling and harboring counts. The Ninth Circuit,

however, determined that this court should have vacated the forced labor convictions (Counts 18-23), rather than declining to sentence Maka on those counts. See United States v. Maka, 237 Fed. Appx. 225, 2007 WL 1725730 (9th Cir. June 14, 2007).

On remand, this court dismissed Counts 18-23. See Order Dismissing Counts (July 13, 2007). On September 26, 2007, Maka filed a motion for a new trial based on newly discovered evidence, arguing that the Government had introduced perjured testimony at trial. That motion was denied the next day. See Order Denying Motion for New Trial Based on Newly Discovered Evidence. (Sept. 27, 2007). Maka appealed this denial. See Notice of Appeal (Oct. 9, 2007). The Ninth Circuit affirmed the dismissal in an unpublished memorandum decision filed on June 24, 2008, ruling that, by failing to explain the significance of the supposedly perjured testimony, Maka had failed to demonstrate a reasonable likelihood that the false testimony could have affected the verdict. See United States v. Maka, 2008 WL 2512617 (9th Cir. June 24, 2008).

While his appeal from the denial of his new trial motion was pending, Maka filed the present petition for relief under 28 U.S.C. § 2255. Given the recent disposition of that appeal, this court now addresses that petition.

3

II.   ANALYSIS.

A federal prisoner may move to vacate, set aside, or correct his or her sentence if it "was imposed in violation of the Constitution or laws of the United States, . . . the court was without jurisdiction to impose such sentence, or . . . the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . ." 28 U.S.C. § 2255.  In his § 2255 Petition, Maka generally asserts five claims, none of which justifies § 2255 relief.

> A.   Maka's Trial Counsel Was Not Ineffective in Making His Opening Statement and Closing Argument (Claim Number 1).

In his first claim, Maka argues that his trial counsel was ineffective when he gave his opening statement and closing argument.  Maka complains that, in the opening statement, his counsel stated:

> You will hear evidence of alien smuggling, and you will hear evidence of documents being held.  However, we ask you to keep an open mind as to whether or not the government has proven the trafficking, the involuntary servitude, or the forced labor situations. And we're confident at the end of the trial that you will find Lueleni Maka not guilty of these charges.

In his closing argument, counsel for Maka conceded Maka's guilt on the alien smuggling and alien harboring charges, but argued that Maka was not guilty of the involuntary servitude, forced labor, human trafficking, and document-based charges.

4

To establish ineffective assistance of counsel, Maka must show that his (1) counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). There is "a strong presumption" that counsel's conduct was reasonable and that counsel's representation did not fall below "an objective standard of reasonableness" under "prevailing professional norms." <u>Id.</u> at 688. Even if Maka can overcome the presumption of effectiveness, he must still demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 694. Because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction," judicial scrutiny of counsel's performance is highly deferential. <u>Id.</u> at 689.

Although Maka recognizes that concession of guilt on some charges to boost a defendant's likelihood of acquittal on other charges is a valid trial strategy, Maka asserts that his trial counsel's performance was deficient because Maka was not consulted before that trial strategy was employed. Even assuming that defense counsel failed to consult Maka before conceding guilt on the alien smuggling and alien harboring charges, Maka fails to show that his counsel was ineffective because he fails to establish prejudice. <u>Strickland</u>, 466 U.S. at 697 (a court may assume that counsel's performance was deficient and dispose of an

5

ineffective assistance of counsel claim based on a lack of prejudice if the claim is more easily decided on the lack of prejudice ground); United States v. Thomas, 417 F.3d 1053, 1056 n.1 (2005) (same).

This is not a case in which prejudice is presumed. The Ninth Circuit's decision in Thomas is particularly instructive on this point. In Thomas, 417 F.3d at 1058-59, the Ninth Circuit rejected a claim that prejudice should be presumed when trial counsel concedes guilt on some charges without consulting the defendant in order to enhance credibility on other, more serious charges. The evidence on the other charges was not clear and the penalties greater, so that a concession of guilt on clearer charges or on some elements might have reduced the likelihood of conviction on the more serious charges. This is exactly what happened here. In conceding Maka's guilt on the alien smuggling and alien harboring charges that were supported by overwhelming evidence, Maka's counsel may have thought that the concessions would improve the possibility that the jury would acquit Maka of the more serious charges.

Maka was not prejudiced by his counsel's concession of guilt, even if counsel failed to consult Maka beforehand. The jury convicted Maka of seven counts of alien smuggling (Counts 24-29, 36) and six counts of alien harboring (Counts 30-35). Overwhelming evidence supported each of these convictions.

Salesi Mahe (Count 24: alien smuggling and Count 30: alien harboring), Francis Jonathan Tautua`a (Count 25: alien smuggling and Count 31: alien harboring), Inoke Taufalele (Count 26: alien smuggling and Count 32: alien harboring), Pita Ma`u (Count 27: alien smuggling and Count 33: alien harboring), Tukutau Tupouata (Count 28: alien smuggling and Count 34: alien harboring), and Taufa Aho (Count 29: alien smuggling and Count 35: alien harboring), the six victims described in the Third Superseding Indictment, testified at trial. Count 36 asserted an alien smuggling charge pertaining to Felipe Aho, the older brother of Taufa Aho. Felipe Aho's videotaped deposition was played at trial. At trial, each of the six victims testified to having entered the United States from Tonga using a valid passport that belonged to someone else and that had been provided by Maka. They all testified that Maka helped them to enter and stay in the country to work for Maka's business. Evidence similarly established that Felipe Aho was caught trying to enter the country with Maka using a passport belonging to Eligado Barrios.

More specifically, Mahe testified that Maka invited him to Hawaii to work and earn money that Mahe could send back to his mother in Tonga. Mahe testified that, in May 2001, he traveled to Hawaii with Maka and another Tongan, using Maka's son's passport to enter the country. Immigration records corroborated

7

the use of the passport of Maka's adult son to enter the country. Mahe testified that, at Maka's direction, he and Aho picked up some documents and pictures that Maka had dropped on the ground in an attempt to prevent immigration officials from seeing their faces as they entered the country. Mahe testified that Maka then took him and Aho to live in a shack on Maka's pig farm. According to Mahe, he and Aho began working for Maka the day after they arrived in the United States and worked there until January 2003.

Tautua`a testified that, in April 2001, while in Tonga, Maka invited Tautua`a to Hawaii to work. Although Tautua`a's father gave Tautua`a's passport to Maka, Maka got Tautua`a into the United States using a passport in the name of Venisini Huanga. In Hawaii, Maka took Tautua`a to Maka's pig farm to live. Tautua`a testified that he began working for Maka the day after he arrived and lived at the farm for several months before moving in with his girlfriend's family. He did not tell Maka that he had stopped living at the pig farm.

Taufalele similarly testified that, in August 2001, he had traveled to Hawaii from Tonga with Maka, Pita Ma`u, and five other Tongans. Taufalele testified that Maka made the travel arrangements and paid for Taufalele's airline ticket. According to Taufalele, at the immigration checkpoint in Hawaii, Maka gave the immigration official a United States passport in the name of

Alfred Lotaki as if it were Taufalele's. At the checkpoint, Maka let his wallet fall to the ground and told Taufalele to bend down and pick it up so that the immigration official would not get a good look at Taufalele. Immigration records corroborated that Maka and a person using Lotaki's passport entered the United States. Taufalele testified that he was taken to Maka's pig farm to live and that he started working for Maka on the day he arrived.

Ma`u testified that, in August 2001, he traveled to Hawaii with Maka and five other Tongans. He testified that Maka made all of the arrangements and paid for his airplane ticket. Ma`u did not have a passport. When he arrived in Honolulu, Maka gave him a United States passport in the name of Sione Maka to use while going through immigration. Ma`u lived at Maka's pig farm and worked for Maka.

Tupouata testified that he came to Hawaii from Tonga in February 2002. He testified that Maka made all of the arrangements and paid for his airplane ticket. According to Tupouata, he traveled to Hawaii with Maka and Maka gave him a United States passport in the name of Kuhio Barrios to use to enter the United States. Immigration records confirmed that Maka entered the country with a "Kuhio Barrios." When Tupouata arrived in Hawaii, Maka instructed him to claim to be a returning citizen. After they cleared immigration, Maka took the United

9

States passport back. Tupouata testified that he was then taken to the pig farm to live.

Taufa Aho testified that, in May 2001, he traveled to Hawaii from Tonga. Maka made all arrangements and paid for the ticket. Aho testified that he traveled to Hawaii with Maka and that Maka instructed him to respond to the name Venisini Huango. Aho testified that Maka told him that, when Maka dropped some pictures while going through immigration, Aho was to slowly pick them up. Aho testified that he did not see the passport used to get him through immigration, but that he had not brought his Tongan passport with him. Like the others, Aho was taken to Maka's farm to live.

Because there was overwhelming evidence of Maka's guilt concerning the alien smuggling and alien harboring charges, Maka fails to establish that he was prejudiced by his counsel's concession of guilt as to those charges. Maka shows no "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

> B.  Maka's Trial Counsel Was Not Ineffective in Noting that Maka Was Guilty of a Conspiracy During Closing Argument (Claim Numbers 2 and 3).

Maka next argues that his trial counsel was ineffective because he noted to the jury during closing arguments that Maka was guilty of a conspiracy to bring people into the United States. Maka asserts that, through this concession of guilt to a

crime not charged in the indictment, the indictment was constructively amended. This court disagrees, determining that trial counsel was not ineffective.

First, the indictment was not constructively amended. The jury was not instructed on a conspiracy charge. Nor did it return a verdict on a conspiracy charge. Neither this court nor the Government changed the terms of that indictment, and Maka was not sentenced on a conspiracy charge. It is simply not the case that Maka was convicted of charges that were not alleged in the Third Superseding Indictment. See United States v. Freeman, 498 F.3d 893, 908 (9th Cir. 2007).

Second, trial counsel's performance was not deficient. Trial counsel used an obvious trial strategy of attempting to bolster his credibility by noting that Maka was guilty of agreeing with others to violate immigration laws in hopes that the jury would be more likely to acquit Maka of the more serious charges alleged in the Third Superseding Indictment.

Finally, even if the court were to assume that trial counsel's performance was deficient, Maka fails to establish the necessary prejudice to succeed on an ineffective assistance of counsel claim. As noted above, Maka was not convicted of an immigration conspiracy. Given the ample evidence against him, there is no reasonable probability that, but for the alleged conspiracy concession, Maka would have been acquitted of any charge alleged in the Third Superseding Indictment.

        C.    Maka's Trial Counsel Was Not Ineffective in Waiving Maka's Right to an Interpreter (Claim Number 4) in a Proceeding Involving a Juror's Illness.

On the fifth day of jury deliberations, January 10, 2005, one of the jurors became ill. The court held a hearing about how the court should proceed in light of the juror's illness. At the hearing, and in Maka's presence, Maka's attorney waived the presence of Maka's interpreter and represented to the court that he had spoken to Maka in English, telling Maka that a juror was ill and would not be able to resume deliberations until January 23, 2005. Maka's counsel told the court that it was Maka's wish to have an alternate replace the ill juror. The court had observed Maka throughout the course of the trial and had determined that Maka spoke enough English to generally understand what was being said. Given the court's own observations, the court questioned Maka in English, telling Maka that, if an alternate replaced the ill juror, the court would instruct the jury to begin deliberations anew. The court asked Maka if he understood and was satisfied with Maka's answer that he did so understand.

Trial counsel was not ineffective in waiving the interpreter's presence. First, trial counsel's performance was not deficient. The record does not establish that Maka did not understand what was happening such that the interpreter was necessary. More importantly, Maka shows no prejudice. There is

12

no reasonable probability that, but for the waiver of the interpreter, the outcome of the trial would have been different. Had the interpreter been present, Maka would have likely made the same decision to have the alternate replace the ill juror. Even if the court assumes that Maka would have wanted to delay the trial until the juror was no longer ill, there is no likelihood that the outcome would have been different. It is pure speculation to think that the ill juror would have voted differently from the alternate juror in the jury deliberation room.

To the extent Maka asserts a due process violation arising out of his counsel's waiver of his interpreter at the discussion regarding the ill juror or the discussion regarding the Supreme Court's decision in <u>Booker</u>, Maka procedurally defaulted on this claim. Maka does not explain why he did not raise this claim in his direct appeal. As the waiver was on the record and did not implicate privileged communications, nothing prevented Maka from litigating this earlier. Nor does Maka establish that the jury's verdict regarding the sentencing enhancements prejudiced him. Accordingly, Maka may not now assert this due process claim in his § 2255 petition. <u>See</u> <u>United States v. Frady</u>, 456 U.S. 152, 167-68 (1982) (holding that a petitioner is procedurally barred from raising an issue in a § 2255 petition if it could have been raised on direct appeal,

13

unless the petitioner can demonstrate both "cause" and "prejudice" for the failure to do so).

        D.    <u>Maka May Not Relitigate His Claim of Multiplicity.</u>

Maka asserts that his convictions on the forced labor charges (counts 18-23) were multiplicitous of his convictions on the involuntary servitude charges (counts 12-17). This court had recognized the multiplicity before sentencing Maka and had not sentenced Maka for forced labor. In Maka's direct appeal, <u>United States v. Maka</u>, 2007 WL 1725730 (9th Cir. June 14, 2007), the Ninth Circuit ruled that this court should have vacated the forced labor count convictions, because this court otherwise was required to impose mandatory special assessments on those counts, which this court had deliberately not done. The Ninth Circuit remanded the case to this court to vacate the forced labor convictions so that the original sentence would not conflict with special assessment requirements. Because the Ninth Circuit has already decided the appropriate remedy for the multiplicitous counts, Maka may not now relitigate the issue and seek a new trial on his other convictions. See <u>Olney v. United States</u>, 433 F.2d 161, 162 (9th Cir. 1970).

        E.    <u>Trial Counsel Did Not Improperly Waive Maka's Presence at Discussions Concerning Notes From the Jury.</u>

Maka finally complains that his presence was waived without his knowledge and consent during numerous discussions concerning notes from the jury. These discussions occurred on

14

December 9, 10, and 12, 2004. This argument does not justify § 2255 relief.

As an initial matter, the factual premise of this argument is incorrect. On December 7, 2004, this court had an on-the-record discussion with Maka's counsel that occurred in Maka's presence while the interpreter was also present. The court asked counsel whether Maka wanted to be present during discussions concerning jury questions. Counsel conferred with Maka and informed the court that Maka said he did not want to be present during discussions concerning jury questions. See Transcript of Proceedings (Dec. 7, 2004) at 105-06.

More importantly, however, this argument could have been raised on direct appeal but was not. This waiver was a matter of record. Maka procedurally defaulted on the argument and may not now raise it for the first time in this § 2255 petition, as Maka has failed to demonstrate why he did not raise it on direct appeal. Maka has moreover failed to establish actual prejudice resulting from the allegedly improper waiver of his presence. See Frady, 456 U.S. at 167-68.

III.    CONCLUSION.

For the reasons set forth above, the court denies Maka's § 2255 petition.  The court decides this matter without holding an evidentiary hearing because the files and records of the case conclusively show that Maka is not entitled to § 2255 relief.  The Clerk of Court is directed to close this case.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, August 8, 2008.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

United States v. Maka, Cr. No. 03-00084 SOM; Civ. No. 08-00024 SOM/KSC; ORDER DENYING PETITION UNDER 28 U.S.C. § 2255