IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| UNITED STATES OF AMERICA, | ) | CR. NO. 03-00084 SOM |
|---|---|---|
| Plaintiff, | ) ) ) ) | ORDER DENYING DEFENDANT'S EMERGENCY MOTION FOR COMPASSIONATE RELEASE |
| vs. | ) ) | |
| LUELENI FETONGI MAKA, | ) ) | |
| Defendant. | ) ) ) | |

**ORDER DENYING DEFENDANT'S EMERGENCY MOTION FOR COMPASSIONATE RELEASE**

**I.      INTRODUCTION.**

Defendant Lueleni Fetongi Maka, a citizen of Tonga, was sentenced in 2006 on several counts of human trafficking in violation of 18 U.S.C. §§ 1590 and 1594, involuntary servitude in violation of 18 U.S.C. § 1584, and alien smuggling and harboring in violation of 18 U.S.C. § 1324.  His total sentence was for 26 years in prison, and he has a projected release date of April 6, 2025.  He now argues that he is entitled to compassionate release under 18 U.S.C. § 3582(c)(1)(A) given his age and medical condition, which place him at considerable risk if he contracts the COVID-19 virus.  This court has had the benefit of full briefing by the parties, of a memorandum from the probation office, and of oral argument.  Maka has been represented on this motion by the Federal Public Defender's office.  Having considered all of the material available to it, this court now

denies Maka's motion.

**II.     BACKGROUND.**

This case went to trial. The evidence established that Maka had tricked at least six young men from Tonga into illegally entering the United States by promising them employment. He gave them false documents and shepherded them through customs. He then proceeded to hold the men in bondage, forcing them to live in squalid conditions on his property and to perform manual labor while being paid far less than the minimum wage. To ensure that they did not attempt to escape, Maka beat some of them brutally and threatened to kill them.

The jury found Maka guilty on numerous counts, ECF No. 118, and this court sentenced him to 26 years in prison. ECF Nos. 182, 186.

Maka, having served approximately 17 years of his prison sentence, has about 5 more years to serve when anticipated "good time" credits are taken into account. He is 67 years old and suffers from several medical conditions, including diabetes, obesity, and high blood pressure, that increase his risk of complications if he contracts COVID-19. Although his prison facility, Big Spring Correctional Institution in Texas, has not yet reported any COVID-19 cases, Maka fears that if COVID-19 does enter the prison, it will spread quickly. With his age and medical conditions heightening the danger to him, he asks this

court to grant his motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) and to reduce his sentence to time served.

### III.     ANALYSIS.

Maka's compassionate release request is governed by 18 U.S.C. § 3582(c)(1)(A), which provides:

> [T]he court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission

In other words, for the court to exercise its authority under § 3582(c)(1)(A), it must (1) find that the defendant exhausted his administrative remedies or that 30 days have passed since he filed an administrative compassionate relief request; (2) also find, after considering the factors set forth in section 3553(a), that extraordinary and compelling reasons warrant a sentence reduction; and (3) find that such a reduction is consistent with the Sentencing Commission's policy statements.

As to the exhaustion requirement, on April 12, 2020, Maka filed a written request with prison authorities for "compassionate release forms." ECF No. 278, PageID # 2453. The very next day, prison officials denied his request on the ground that he was subject to an immigration detainer and was therefore "ineligible for community based programs, [including] compassionate release." *Id.* The record does not contain any indication that Maka appealed that administrative denial. Instead, he immediately filed the motion now before this court. At this point, more than 30 days have passed since Maka filed his administrative request. Although § 3582(c)(1)(A) might be read to have required that Maka wait 30 days from the prison's receipt of his request instead of filing this motion immediately, the Government has informed this court that it is no longer maintaining its earlier argument that Maka had failed to properly exhaust. This court had invited Maka to simply refile his motion after the 30-day period had passed to moot out any exhaustion challenge, but that is unnecessary given the Government's position. This court deems there to be no exhaustion issue before it.

This court therefore turns to § 3582(c)(1)(A)'s second requirement: whether extraordinary and compelling reasons warrant a sentence reduction. In enacting § 3582(c)(1)(A), Congress did not attempt to define "extraordinary and compelling." *United*

*States v. Marks*, 2020 WL 1908911, at *4 (W.D.N.Y. Apr. 20, 2020). Congress did, however, direct the Sentencing Commission to promulgate general policy statements describing "what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). Under § 3582(c)(1)(A)'s third requirement, a court's finding that extraordinary and compelling reasons justify compassionate release must be consistent with the Sentencing Commission's policy statements. 18 U.S.C. § 3582(c)(1)(A).

The Sentencing Commission has identified four categories of extraordinary and compelling reasons. According to the Sentencing Commission, a defendant should be granted compassionate release if (1) the defendant suffers from a terminal illness and certain other conditions are met; (2) the defendant suffers from a physical or mental condition that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover;" (3) certain family circumstances justify compassionate release; or (4) "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, [the first three categories of reasons]." U.S.S.G. § 1B1.13.

That policy statement appears to be in need of updating.  In 2018, Congress passed the First Step Act, which amended § 3582(c)(1)(A) to allow defendants to bring motions seeking compassionate relief to the courts.  First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (2018).  Previously, only the Bureau of Prisons could ask the courts for such relief.  The Sentencing Commission's policy statements do not reflect the courts' expanded authority.  It appears that the Sentencing Commission has not had the opportunity to revise the policy statement in response to the First Step Act, because, since the passage of the First Step Act, the Sentencing Commission has only had two voting commissioners.  *See, e.g.*, *United States v. Haynes*, 2020 WL 1941478, at *12 n.20 (E.D.N.Y. Apr. 22, 2020). The guidelines cannot be amended until two more voting commissioners are appointed to constitute a quorum.  *Id.*

Nor it is obvious that courts remain bound by what the Sentencing Commission has so far announced, which is in considerable tension with the First Step Act.  If read literally, the existing policy statement would only permit courts to determine whether an inmate fell into one of the three narrow categories of extraordinary and compelling circumstances identified by the Sentencing Commission.  The fourth, "catch-all" provision only permits the *Director of the Bureau of Prisons* to determine whether other extraordinary and compelling reasons

exist. The policy statement would therefore severely limit the authority conferred on the courts by the First Step Act.

Because of this tension, "courts are divided on whether they may disregard the stated deference to the Director of the Bureau of Prisons in determining what 'other reasons' would qualify as extraordinary and compelling." *Hirano v. United States*, 2020 WL 1861659, at *2 (D. Haw. Apr. 13, 2020). There appears to be a growing consensus that "U.S.S.G. § 1B1.13 as currently written would not constrain [a court's] ability to find extraordinary and compelling reasons warranting a sentence reduction[.]" *United States v. Vo.*, 2020 WL 2300101, at *2 (N.D. Cal. May 7, 2020); *see also, e.g.*, United *States v. Etzel*, 2020 WL 2096423, at *3 (D. Or. May 1, 2020) ("The Court is persuaded by the reasoning of numerous other district courts and holds that it is not constrained by the BOP Director's determination of what constitutes extraordinary and compelling reasons for a sentence reduction.").

Those decisions are persuasive to this court. Section 3582(c)(1)(A) states that a court's finding of extraordinary and compelling reasons must be *consistent with* the Sentencing Commission's guidance. Before Congress enacted the First Step Act, the Sentencing Commission determined that the BOP Director had wide discretion in determining whether extraordinary and compelling reasons existed. That guidance is consistent with a

recognition that courts now can exercise the same discretion. However, it is unnecessary to resolve that dispute here. Even if this court does have considerable discretion in determining whether extraordinary and compelling reasons are present, this court does not grant Maka's motion for compassionate release.

Maka appears to contend that his vulnerability to COVID-19, standing alone, constitutes an extraordinary and compelling reason that justifies his immediate release. ECF No. 272, PageID # 2370. That argument goes too far. The compassionate relief statute cannot be a panacea for all of the problems facing prisons struggling to cope with COVID-19. Not every vulnerable inmate is entitled to immediate release from prison. For instance, an inmate convicted of a violent crime who has just begun to serve a lengthy prison sentence may also be vulnerable to COVID-19, yet Congress may not have intended that such an inmate be released in light of the pandemic.[1]

For some inmates, the pandemic may constitute an extraordinary and compelling reason that justifies a reduced sentence. However, in determining whether extraordinary and compelling reasons justify a reduced sentence, Congress directed the courts to consider the factors set forth in 18 U.S.C. § 3553.

---

[1] Maka cites cases holding that prison officials may not be deliberately indifferent to the possibility that inmates will be exposed to a life-threatening illness. ECF No. 272, PageID # 2370 (citing *Wallis v. Baldwin*, 70 F.3d 1074, 1076 (9th Cir. 1995). There are no allegations of deliberate indifference here.

8

With its references to the circumstances of the offense and the history and characteristics of a defendant, § 3553 suggests that courts should consider factors such as the severity of the underlying crime and the time remaining on an inmate's sentence before granting a request for compassionate relief that is based on the coronavirus.  Those factors present an obstacle for Maka. Maka convinced several young men to enter the country illegally by offering them jobs in the United States.  Once the young men arrived, he held them in bondage, paid them far less than the minimum wage, and beat them on numerous occasions. He displayed no qualms about using violence against vulnerable victims.  That he did so against multiple victims raises the concern that, even after his age is taken into account, he may still pose a threat to the public.  He committed the offenses of conviction when he was between 48 and 50 years old, not when he was a very young man.  In addition, Maka has at least five years remaining on his sentence.  His is not a case in which he is on the eve of completing his sentence.

     A huge consideration for this court is Maka's immigration status.  It appears that Maka is subject to an immigration detainer.  Whenever his criminal sentence ends, he will not be automatically released.  Immigration authorities will then have authority over him.  While he might be held by ICE at a BOP facility, it is possible that he might be placed in an

immigration facility where COVID-19 is present, or that is less equipped to deal with the pandemic than a BOP facility might be. This court is by no means concluding that BOP facilities are safe from the coronavirus. To the contrary, the court is very much aware that social distancing may be nearly impossible to maintain, and that an infection can sweep through a prison rapidly. Indeed, the State of Texas reportedly has a substantial number of residents who have been infected, and a significant number of those have died. The court is only noting that an ICE detention center might leave Maka more exposed to COVID-19.

Maka argues that he will seek to be released on bail while ICE pursues a deportation action against him. One can only speculate as to whether such a request will be granted. Certainly there is no guarantee that ICE will agree to release Maka, a violent offender, on bail.[2] And even if ICE does grant Maka's request, such a decision might come only after Maka has

---

[2] Maka also argues that a federal district court might order ICE to release him from detention. ECF No. 284, PageID # 2475. As Maka notes, a request for an injunction is likely to be heard by a federal district court in Texas. *Id.* In a recent decision, a Texas district court ordered ICE to release a detainee convicted of a *nonviolent offense* from custody because that detainee was vulnerable to COVID-19. *Vazquez Barrera v. Wolf*, 2020 WL 1904497, at *7-8 (S.D. Tex. Apr. 17, 2020). However, the court refused to order the release of a detainee convicted of a *violent offense* because that detainee continued to pose a threat to the public. *Id.* Admittedly, that detainee's violence was recent, while Maka's is years ago. However, Maka was violent with more people, and his history of violence suggests that he also might be denied release because of a threat to the public.

been held in an ICE facility pending that decision.

Moreover, if ICE did release Maka, this court cannot be certain that he would be safe from COVID-19.  Maka asserts that if he is released from custody, he will return to Hawaii to live with his brother.  It is not clear, however, that ICE would permit Maka to travel to Hawaii.  Maka has not explained where he would stay if ICE required him to remain in Texas if ICE released him.

Finally, Maka faces the likelihood of eventual deportation to Tonga.  After he is deported, Maka will have to travel to Tonga from Texas, a journey that will involve several flights where Maka could also contract COVID-19.  Moreover, by his own admission, once he returns to Tonga it may become more difficult for him to receive treatment for his diabetes.[3]  ECF No. 277, PageID # 2448.  In other words, deportation involves its own threats to Maka's health.

Maka maintains that, because his diabetes cannot be treated in Tonga, he may be able to defer his deportation under the Convention Against Torture.  ECF No. 277.  The present record does not show that such an argument is likely to prevail.  To succeed on a CAT claim, Maka must demonstrate that he will be tortured.  Torture is defined as "any act by which severe pain or

---

[3] Maka has not presented any actual evidence showing that he could not receive treatment for his medical conditions in Tonga.

11

suffering, whether physical or mental, is intentionally inflicted on a person." *Singh v. Whitaker*, 914 F.3d 654, 663 (9th Cir. 2019). "The torture must be by government officials or private actors with government acquiescence." *Arrey v. Barr*, 916 F.3d 1149, 1160 (9th Cir. 2019). Even if Maka cannot receive treatment in Tonga, a claim that the Tongan government has intentionally made treatment for diabetes unavailable to inflict pain and suffering on its citizens seems unlikely to succeed. Moreover, if being sent to Tonga would mean subjecting Maka to torture, hastening that prospect by granting this motion would be cruel.

The parties and this court have been forced to examine what may or may not be likely. No one wants to rely on speculation, but some assessment of what the future holds is unavoidable. Maka posits that COVID-19 will enter his prison, and he seeks release before it is too late. But if deportation to Tonga follows fairly soon after any release from prison, he may be worse off. The court stresses that it is not taking the position that anyone who is not a citizen is not eligible for compassionate release. The court is instead looking at how an individual's immigration status will likely affect him or her if compassionate release is granted. Not only does the vicious conduct underlying Maka's conviction give this court pause, his likely deportation undercuts his argument that shortening his

sentence would be compassionate. Maka does not show a likelihood that he would be released on bail pending a decision on being removed from the United States, or that he could forestall ultimate deportation. And when he likens the alleged lack of medical resources in Tonga to torture, it is hard to avoid the conclusion that hastening deportation by shortening his criminal sentence might be the opposite of compassionate.

This court has considered the totality of the circumstances and the factors set forth in § 3553. Section 3553 commands this court to consider "the nature and circumstances of the offense and the history and characteristics of the defendant." Weighing the violent circumstances of Maka's crimes and his likely deportation against his age and medical conditions and the COVID-19 risk, this court determines that a reduction in Maka's sentence is not warranted.

**V.     CONCLUSION.**

Maka's request for compassionate release under 18 U.S.C. § 3582(c)(1)(A) is denied.

DATED: Honolulu, Hawaii, May 19, 2020.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

*United States v. Maka*, Cr. No. 03-00084 SOM; ORDER DENYING DEFENDANT'S EMERGENCY MOTION FOR COMPASSIONATE RELEASE