IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 03-00084 SOM |
| | ) | |
| Plaintiff, | ) | ORDER DENYING DEFENDANT |
| | ) | LUELENI FATONGI MAKA'S SECOND |
| | ) | MOTION FOR COMPASSIONATE |
| | ) | RELEASE |
| vs. | ) | |
| | ) | |
| LUELENI FATONGI MAKA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

**ORDER DENYING DEFENDANT LUELENI FATONGI MAKA'S SECOND
MOTION FOR COMPASSIONATE RELEASE**

**I.      INTRODUCTION.**

Defendant Lueleni Fatongi Maka, a citizen of Tonga, was sentenced in 2006 on several counts of human trafficking in violation of 18 U.S.C. §§ 1590 and 1594, involuntary servitude in violation of 18 U.S.C. § 1584, and alien smuggling and harboring in violation of 18 U.S.C. § 1324.  Now housed at a private facility in Texas under a contract with the Bureau of Prisons, he is serving a total prison sentence of 26 years, and he has a projected release date of April 6, 2025.

In April 2020, Maka moved for compassionate release under 18 U.S.C. § 3582(c)(1)(A).  This court denied Maka's motion.  This court recognized that Maka could suffer complications if he contracted COVID-19 in prison, but also considered the seriousness of Maka's crimes and the time remaining on his sentence.  The court addressed the possibility

that Maka would be detained by immigration authorities and might be at risk of contracting COVID-19 during that detention even after his release from prison, and the "torture" that Maka said awaited him if he were deported to Tonga. This court concluded that Maka had not demonstrated that extraordinary and compelling circumstances warranted a reduction in his sentence. ECF No. 286.

Maka has now filed a second motion for compassionate release. This court is not persuaded that a departure from this court's initial ruling is now warranted. This court denies Maka's motion.

**II.     ANALYSIS.**

Maka's compassionate release request is governed by 18 U.S.C. § 3582(c)(1)(A), which provides:

> [T]he court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . .
>
> and that such a reduction is consistent with

2

>>applicable policy statements issued by the Sentencing Commission.

In other words, for the court to exercise its authority under § 3582(c)(1)(A), it must (1) find that the defendant exhausted his administrative remedies or that 30 days have passed since he filed an administrative compassionate relief request; (2) also find, after considering the factors set forth in section 3553(a), that extraordinary and compelling reasons warrant a sentence reduction; and (3) find that such a reduction is consistent with the Sentencing Commission's policy statements. *United States v. Scher*, 2020 WL 3086234, at *2 (D. Haw. June 10, 2020).

>>**A. Maka has satisfied the time-lapse requirement of 18 U.S.C. § 3582(c)(1)(A).**

Maka submitted administrative compassionate release requests to the warden of his prison on July 30, 2020, and August 30, 2020, more than 30 days before he filed this motion. *See* ECF No. 292, PageID # 2532. The Government is not contesting Maka's satisfaction of the exhaustion requirement. Accordingly, this court finds that Maka has fulfilled the first requirement of § 3582(c)(1)(A).

> B.  **This Court Has Discretion in Determining Whether Extraordinary and Compelling Reasons Justify a Reduced Sentence.**

This court turns to § 3582(c)(1)(A)'s second requirement: whether extraordinary and compelling reasons warrant a sentence reduction. In orders addressing compassionate release motions in other cases, this court has expressly recognized that it possesses considerable discretion in determining whether a particular defendant has established the existence of extraordinary and compelling reasons that justify early release. This court has also stated that, in reading § 3582(c)(1)(A) as providing for considerable judicial discretion, the court is well aware of the absence of an amended policy statement from the Sentencing Commission reflecting the discretion given to courts when Congress amended the statute to allow inmates themselves to file compassionate release motions. Previously, only the Bureau of Prisons could file such motions for inmates. *See United States v. Mau*, 2020 WL 6153581 (D. Haw. Oct. 20, 2020); *United States v. Scher,* 2020 WL 3086234, at *2 (D. Haw. June 10, 2020); *United States v. Cisneros*, 2020 WL 3065103, at *2 (D. Haw. Jun. 9, 2020); *United States v. Kamaka*, 2020 WL 2820139, at *3 (D. Haw. May 29, 2020). Specifically, this court has recognized that an Application Note to a relevant sentencing guideline is outdated. This court continues to view its discretion as not limited by Sentencing Commission pronouncements that are now at

4

odds with the congressional intent behind recent statutory amendments.

As amended by Congress, § 3582(c)(1)(A) states that a court's conclusion that extraordinary and compelling circumstances warrant a reduction in sentence must be consistent with any *applicable* policy statements issued by the Sentencing Commission. But following the First Step Act's amendments to § 3582(c)(1)(A) in 2018, the Sentencing Commission did not adjust its statements to make them consistent with the statutory amendment allowing prisoners themselves to bring motions for compassionate release. Instead, the Sentencing Commission has left in place statements premised on the Bureau of Prisons' exclusive authority to bring compassionate release motions. This court reads such statements as inapplicable to motions brought directly by prisoners. This court's exercise of discretion is consistent with the statutory amendment and at least the spirit of the Sentencing Commission's approach. *Mau*, 2020 WL 6153581; *Kamaka*, 2020 WL 2820139, at *2-3.

This court reads Application Note 1 to section 1B1.13 of the Sentencing Guidelines, which relates to compassionate release motions, as providing that extraordinary and compelling reasons warrant early release under any of four circumstances: if "(1) the defendant suffers from a terminal illness and certain other conditions are met; (2) the defendant suffers from a

physical or mental condition that 'substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover;' (3) certain family circumstances justify compassionate release; or (4) '[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, [the first three categories of reasons].'" *Kamaka*, 2020 WL 2820139, at *2 (quoting U.S.S.G § 1B1.13, Application Note 1). Crucially, the final "catch-all" category applies only to the situation in which the Director of the Bureau of Prisons has made the required determination relating to compassionate release.

That "catch-all" made sense when only the Director of the Bureau of Prisons could bring a compassionate release motion. The Sentencing Commission anticipated that the Director of the Bureau of Prisons, and not the courts, would rely on the four categories:

> A reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons pursuant to 18 U.S.C. § 3582(c)(1)(A). The Commission encourages the Director of the Bureau of Prisons to file such a motion if the defendant [falls under any of the four enumerated categories]. *The court is in a unique position to determine whether the circumstances warrant a reduction (and, if so, the amount of reduction), after considering the factors set forth in 18*

> *U.S.C. § 3553(a) and the criteria set forth in this policy statement, such as the defendant's medical condition, the defendant's family circumstances, and whether the defendant is a danger to the safety of any other person or to the community.*

U.S.S.G § 1B1.13, Application Note 4 (emphasis added).  In other words, the Sentencing Commission anticipated that the Director of the Bureau of Prisons would file a compassionate release motion whenever it determined that an inmate fell into one of the four enumerated categories of extraordinary and compelling circumstances.  Even then, when a court considered the motion, it was expected to exercise discretion (after considering a broad range of criteria, such as the § 3553 factors, the defendant's medical condition, and the defendant's family circumstances).  That is, when the Director of the Bureau of Prisons brought a motion to the court, the Sentencing Commission did not intend for the court to be bound by the four enumerated categories.  In particular, the Sentencing Commission did not intend for the court to be bound by the Director of the Bureau of Prisons' determination that "other reasons" justified early release.

If courts were indeed bound by the "catch-all" category, and if that category only allowed the Director of the Bureau of Prisons to exercise discretion, then judicial review would be meaningless.  Courts would have to determine that extraordinary and compelling circumstances existed every time the Director of the Bureau of Prisons made such a determination.

7

Courts would be nothing more than a rubber stamp. That was not the vision the Sentencing Commission had even under the old scheme. Instead, in noting that a court was in "a unique position to determine whether the circumstances warrant a reduction," the Sentencing Commission was clearly anticipating that courts would independently review such motions. U.S.S.G § 1B1.13, Application Note 4.

In sum, in Application Note 1, the Sentencing Commission reviewed the four categories that the Director of the Bureau of Prisons, not the courts, could consider in bringing motions. Those categories are not "applicable" to compassionate release motions brought by inmates themselves. *See United States v. Brooker*, --- F.3d ---, 2020 WL 5739712, at *4-6 (2d Cir. Sept. 25, 2020) ("[W]e read the Guideline as surviving, but now applying only to those motions that the BOP has made."). Even if the commentary applies to motions filed by inmates, a court's exercise of discretion to make the determination formerly made by the Director of the Bureau of Prisons is consistent with the Sentencing Commission's understanding of the scope of a court's authority over the ultimate compassionate release decision. *Accord Mau*, 2020 WL 6153581; *Kamaka*, 2020 WL 2820139, at *2.

In allowing inmate motions, Congress gave no indication that judicial discretion was more constrained with inmate motions than with Bureau of Prisons motions. It appears that Congress

reasonably expected Application Note 1 to be amended or supplemented. That did not occur. Possibly that was because the Sentencing Commission was short commissioners and thus lacked a quorum.[1] As this court has already concluded, the outdated Application Note does not constrain this court's discretion in determining whether extraordinary and compelling circumstances warrant a reduction in a sentence. *See Mau*, 2020 WL 6153581.

> **C. Maka has not demonstrated that extraordinary and compelling circumstances justify his early release.**

In its order denying Maka's first motion for compassionate release, this court recognized that Maka's age (67) and his diabetes, obesity, and high blood pressure[2] put him at risk of developing complications if he contracted COVID-19.[3] *See*

---

[1] It appears that the Sentencing Commission has not had the opportunity to revise the policy statement in response to the First Step Act, because, since the passage of the First Step Act, the Sentencing Commission has had only two voting commissioners. *See, e.g.*, *United States v. Haynes*, 2020 WL 1941478, at *12 n.20 (E.D.N.Y. Apr. 22, 2020). The guidelines cannot be amended until two more voting commissioners are appointed to constitute a quorum. *Id.*

[2] Maka also points to kidney disease, which is mentioned in the medical records but with very little detail.

[3] In a supplemental memorandum filed on October 16, 2020, Maka indicated that he had developed a cough, which is a potential symptom of COVID-19. ECF No. 298, PageID # 2562. It has been about a week since Maka's attorney says Maka reported his cough to her, and Maka has not informed the court that his symptoms have become worse or that he has tested positive for COVID-19. The court is therefore not proceeding with the understanding that Maka has COVID-19, but, of course, if the court is mistaken, Maka should promptly so inform the court. In

ECF No. 284, PageID # 2491, 2497.  This court nevertheless found that several factors weighed against granting Maka's request for compassionate release.

First, Maka was convicted of a crime that involved convincing several young men to enter the country illegally by offering them jobs in the United States.  Once the young men arrived, he held them in bondage and paid them far less than the minimum wage.  To ensure that they did not attempt to escape, Maka beat some of them brutally and threatened to kill them.  Because Maka expressed no qualms about using violence against multiple victims, this court, in denying Maka's earlier motion, expressed concern that, even after his age is taken into account, Maka still could pose a threat to the public.  *Id.* at 2491, 2498.  Second, the court noted that Maka had approximately five years remaining on his sentence.  *Id.* at 2498.  Third, it appeared to the court that, if released by this court, Maka would likely not be at liberty but instead could well be detained by ICE while fighting any deportation order.  The court recognized that Maka might not be less likely to be exposed to COVID-19 in an ICE detention facility than he would be in prison.  *Id.* at 2498-99.  Fourth, after his release, it appeared likely that Maka would

---

so stating, this court is by no means saying that only someone suffering from a severe case of COVID-19 is entitled to relief. The court is well aware of the risks that all prisoners face and endeavors to take those risks into account.

ultimately be deported to Tonga.  Maka himself said that, if deported to Tonga, he would not receive adequate medical care. *Id.* at 2500, 2502.  Citing all of these reasons, this court ruled that Maka had not shown that extraordinary and compelling reasons warranted a reduction in his sentence.  *Id.* at 2502.

In his second request for compassionate release, Maka contends that this court should reach a different result for three reasons: (1) this court erred by considering the possibility that Maka would be detained by ICE after his release from prison in its first order, ECF No. 292, PageID # 2535; (2) this court erred by considering the possibility that Maka would not receive sufficient medical treatment in Tonga in its first order, *id.* at 2537-39; and (3) the pandemic has gotten worse since this court issued its first order, and COVID-19 has now entered the prison where Maka is housed.  *Id.* at 2534; *see also* ECF No. 295, PageID # 2555-2556.  None of Maka's arguments causes this court to change its initial ruling.

Maka first maintains that the court's concerns that he could be exposed to the coronavirus in ICE custody are "speculative" and fail to accord sufficient weight to the possibility that he could be exposed to COVID-19 at Big Spring (Flightline) CI.  ECF No. 292, PageID # 2535-36.  The entire premise of Maka's motion is that this court should reduce his sentence by nearly five years because he is vulnerable to

11

complications from COVID-19 and is *more likely to be exposed to the virus in prison* than he would be in the community.  *See, e.g.*, *id.* at 2536 ("Prisons are not safer than living in the community[.]").  As this court stated in its initial ruling, the court fully understands how easily the virus can spread in prisons, where social distancing is difficult.  But a prison facility and an ICE detention facility are similar in that regard.  At the very least, the dangers that Maka will face at an ICE detention facility are comparable to the dangers he will face in prison.  Thus, while this court cannot be certain that Maka will indeed be detained by ICE after his release, the court must at least consider the possibility[4] that, if the court grants Maka's request for early release, his sentence will be reduced by approximately four and a half years and yet the court will not have achieved its goal of keeping him safer.

        Maka has expressed concern about speculation by the court.  This court shares Maka's desire for greater certainty but finds that, with every compassionate release motion it considers, it is forced to examine possibilities and make determinations without guarantees of what will occur.  The court can never know,

---

[4] Nothing in the record demonstrates that it is likely that ICE will release Maka on bail while he challenges his deportation.  Maka himself appears to want this court to speculate that ICE will release him to live with his family in Hawaii pending possible deportation.  That is a possibility, but Maka makes no showing that it is more likely than detention in an ICE facility.

for example, whether a particular person will contract COVID-19, or whether the infection rate at a specific facility will increase or decrease.  If an individual contracts COVID-19, it is unclear what, if any, immunity the individual may then have.  Nor can the court say definitively how someone will perform if released early.  Examining what ICE might do to a deportable individual who is released early involves no more "speculation" than taking into account any other of the many possibilities this court must consider.  Some weighing of possibilities and uncertainties is unavoidable in the context of all compassionate release motions, and that weighing is not erroneous just because it cannot yield an unassailably accurate assessment.

Thus, this court does not agree with Maka that the court committed a second error in considering the possibility that, if released, Maka will be deported to Tonga, where he says he will be unable to receive the medical care he needs to treat his diabetes.  According to Maka, because he "fully understands his options and the reality of medical treatment in Tonga" and nevertheless has chosen to seek early release, this court must defer to that choice without considering the assertions he himself made in his original motion.  In that original motion, he said that, if deported to Tonga, his medical treatment will be so lacking that it might be tantamount to torture.  ECF No. 292, PageID # 2538; see also ECF No. 277, PageID # 2248.  Maka

13

characterizes any decision that takes the alleged torture into account as improperly keeping him "in jail essentially *for [his] own safety.*" ECF No. 292, PageID # 2537. This characterization ignores the background of this court's discussion of Maka's immigration consequences.

That background begins with Maka's first compassionate release motion, in which Maka argued that he might prevail in a challenge to deportation by asserting the Convention Against Torture, given the inadequate medical treatment he anticipated receiving if deported to Tonga. ECF No. 277. This court has previously questioned the viability of Maka's argument in this regard. ECF No. 286, PageID # 2500-01.

This court's order denying Maka's earlier motion noted that, if torture would occur, "it is hard to avoid the conclusion that hastening deportation by shortening his criminal sentence might be the opposite of compassionate." ECR No. 286, PageID #$ 2502. In so stating, this court was *responding* to Maka's contention that deportation would subject him to torture. This court was not the originator of the idea that Maka would suffer greatly if deported. Instead, in ruling on Maka's request that this court be compassionate and release him, the court was addressing the very horror that Maka said he would face if deported following release. This court assures Maka that it does not subscribe to the notion that it should incarcerate someone

for his own good.  It was only because Maka claimed to be in danger of being tortured on release that this court said it was "hard to avoid" the thought that granting Maka's release request might not be compassionate.  In short, this court was pointing out a fallacy in Maka's argument, rather than articulating a judicial philosophy.  Far from seeking to override Maka's choices, this court was addressing Maka's assertion that deportation might not occur because of conditions in Tonga.  That assertion was being made in the context of a motion for release on compassionate grounds, so Maka himself was putting consideration of compassion in play.

Now Maka is again asking this court to reduce his sentence by approximately four and a half years because of the threat that remaining in prison poses to his health.  In that context, it makes sense to examine whether early release[5] would pose its own dangers.

---

[5] Maka argues that because the process of challenging his deportation could last five years, "it does not appear [his early] release would hasten" his exposure to "Tonga's torturous conditions."  ECF No. 292, PageID # 2539.  Maka appears to be saying that, even if he is released nearly five years early, because it will also take five years to challenge his deportation, irrespective of how this court rules he could be returned to Tonga "in about the same amount of time."  *Id*.  That is not a reason to grant this motion.  Presumably, he will challenge his deportation even if he is not released early.  No matter when he is released, there could be a five-year delay between release and any deportation that might ultimately occur.

15

Finally, as Maka asserts, COVID-19 has infected people at Big Spring (Flightline) CI, where he is housed. The BOP reports that six inmates at Flightline have tested positive for COVID-19.[6] *See* www.bop.gov/coronavirus (last visited October 23, 2020). Maka has indicated that one of those inmates is housed in his unit. ECF No. 298, PageID # 2561-62.

The presence of COVID-19 at Big Spring CI is definitely an important factor to consider. This court takes seriously the risks that the coronavirus poses to Maka, especially given his medical conditions. But in determining whether, under § 3582(c)(1)(A), extraordinary and compelling reasons justify a reduction in an inmate's sentence, this court is called upon to balance a number of factors. Critical to this court are the seriousness of Maka's crimes, the amount of time remaining on his sentence, his criminal history, and the potential for recidivism. Added to the possibility that he may be detained by ICE and then deported to Tonga after his release, the factors counseling against his early release outweigh this court's concern about Maka's admittedly serious medical conditions and the infections at his facility. This is not an easy decision. A person with a less serious underlying crime but the same medical conditions

---

[6] Big Spring (Flightline) CI is a privately managed prison. It should not be confused with Big Spring FCI, a BOP prison where more than 700 inmates have tested positive. *See* www.bop.gov/coronavirus (last visited October 23, 2020).

16

housed at a facility with a substantial rate of infection might very well persuade this court.  Indeed, this court understands why Maka has brought a second motion and why his attorney has so thoroughly advocated on his behalf.  But when all relevant circumstances are considered, this court again determines that the reasons raised by Maka, while important, do not rise to the level of being extraordinary and compelling reasons warranting a reduction in his sentence.

**III.     CONCLUSION.**

Maka's request for compassionate release under 18 U.S.C. § 3582(c)(1)(A) is denied.

It is so ordered.

DATED: Honolulu, Hawaii, October 23, 2020.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

United States v. Maka, Cr. No. 03-00084 SOM; ORDER DENYING LUELENI FATONGI MAKA'S SECOND MOTION FOR COMPASSIONATE RELEASE