IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| UNITED STATES OF AMERICA, | ) | CR. NO. 03-00084 SOM |
|---|---|---|
| Plaintiff, | ) ) ) ) | ORDER GRANTING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE |
| vs. | ) ) | |
| LUELENI FETONGI MAKA, | ) ) | |
| Defendant. | ) ) ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE**

**I.        INTRODUCTION AND BACKGROUND.**

On December 14, 2004, a jury found Defendant Lueleni Fetongi Maka, a citizen of Tonga, guilty of several counts of human trafficking in violation of 18 U.S.C. §§ 1590 and 1594, involuntary servitude in violation of 18 U.S.C. § 1584, and alien smuggling and harboring in violation of 18 U.S.C. § 1324.  On April 28, 2006, this court sentenced him to 26 years in prison. He has served more than 19 years of that sentence, and has a projected release date of April 6, 2025.

Maka now moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A).  This court denied Maka's two earlier compassionate release motions, which were based on the COVID-19 pandemic.  He now raises new grounds for relief.  He contends that he has demonstrated extraordinary and compelling reasons for a reduction in his sentence because he has served most of his

sentence and suffers from numerous physical ailments, including "diabetes, type II with renal manifestations, hyperlipidemia, proliferative diabetic retinopathy, hypertension, type 2 diabetes mellitus with diabetic neuropathy, vitamin D deficiency, sleep apnea, age-related cataract, chronic kidney disease, stage 3 (moderate) . . . [and] body mass index 39.0-39.9." ECF No. 312, PageID # 2718.  After considering Maka's medical condition and the time left on his sentence, this court grants his motion for compassionate relief.

## II.     ANALYSIS.

Maka's motion to reduce his sentence is governed by 18 U.S.C. § 3582(c)(1)(A), which provides:

> [T]he court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

In other words, for the court to exercise its authority under § 3582(c)(1)(A), it must (1) find that the defendant exhausted his administrative remedies or that 30 days have passed since he filed an administrative compassionate relief request; (2) also find, after considering the factors set forth in section 3553(a), that extraordinary and compelling reasons warrant a sentence reduction; and (3) find that such a reduction is consistent with the Sentencing Commission's policy statements (assuming there are any policy statements applicable to this motion). *See United States v. Balgas*, 2021 WL 2582573, at *1 (D. Haw. June 23, 2021) *United States v. Scher*, 2020 WL 3086234, at *2 (D. Haw. June 10, 2020).

### A. Maka Has Satisfied the Time-lapse Requirement of 18 U.S.C. § 3582(c)(1)(A).

On December 28, 2021, Maka requested compassionate release from the warden of his facility. ECF No. 316, PageID # 2897. More than 30 days have now passed since he submitted that request. The Government does not dispute Maka's satisfaction of the time-lapse requirement of 18 U.S.C. § 3582(c)(1)(A).

### B. This Court Has Discretion in Determining Whether Extraordinary and Compelling Reasons Justify a Reduced Sentence.

This court turns to § 3582(c)(1)(A)'s second requirement: whether extraordinary and compelling reasons warrant a sentence reduction. In orders addressing compassionate release

3

motions in other cases, this judge has expressly recognized that courts possess considerable discretion in determining whether a particular defendant has established the existence of extraordinary and compelling reasons that justify early release.

This judge has also stated that, in reading § 3582(c)(1)(A) as providing for considerable judicial discretion, she is well aware of the absence of an amended policy statement from the Sentencing Commission reflecting the discretion given to courts when Congress amended the statute to allow inmates themselves to file compassionate release motions. *Balgas*, 2021 WL 2582573, at *2; *United States v. Mau*, 2020 WL 6153581 (D. Haw. Oct. 20, 2020); *United States v. Scher,* 2020 WL 3086234, at *2 (D. Haw. June 10, 2020); *United States v. Cisneros*, 2020 WL 3065103, at *2 (D. Haw. Jun. 9, 2020); *United States v. Kamaka*, 2020 WL 2820139, at *3 (D. Haw. May 29, 2020). Specifically, this court has recognized that an Application Note to a relevant sentencing guideline is outdated.  This court continues to view its discretion as not limited by Sentencing Commission pronouncements that are now at odds with the congressional intent behind recent statutory amendments.  *Balgas*, 2021 WL 2582573, at *2; *see also United States v. Brooker*, 976 F.3d 228, 235-36 (2d Cir. 2020) ("[W]e read the Guideline as surviving, but now applying only to those motions that the BOP has made."); *cf. United States v. Ruffin*, 978 F.3d 1000, 1007-08

(6th Cir. 2020) (noting that some courts have held that the Application Note is not "applicable," but not deciding the issue).

The Ninth Circuit has expressly recognized that there is no applicable Sentencing Commission policy statement governing compassionate release motions filed by defendants under § 3582(c)(1)(A). Nevertheless, while the Sentencing Commission's statements in U.S.S.G § 1B1.13 are not applicable policy statements that are binding on this court, they may inform this court's discretion. *See United States v. Aruda*, 993 F.3d 797, 801-02 (9th Cir. 2021) (per curiam).

> **C. Maka Has Demonstrated That Extraordinary and Compelling Circumstances Justify a Reduction in His Sentence.**

Maka contends that his sentence should be reduced for several different reasons. *See generally* ECF Nos. 305, 312. This court relies primarily on one: Maka's many physical ailments. ECF No. 312, PageID # 2717-18. His medical condition, when combined with the limited time left on his sentence, is an extraordinary and compelling reason that justifies a limited reduction in his sentence.

The court begins with the amount of time left on Maka's sentence. Because he was detained after his arrest, Maka has been incarcerated since February 6, 2003. ECF Nos. 3, 5, 19, 33. He has served more than 19 years of his sentence. His projected

release date is April 6, 2025. When good time credit is taken into account, he has served more than 85% of his sentence.[1]

Maka's physical condition is poor. He is currently 69 years old, and his prison health record notes that he suffers from numerous unresolved issues, including type II diabetes, hyperlipidemia, hypertension (benign), vitamin D deficiency, an "age-related cataract," sleep apnea, stage 3 chronic kidney disease (moderate), and obesity (on September 23, 2021 he was 6 feet and 1 inch tall, and on March 4, 2022 he weighed 299 pounds). ECF No. 315, PageID # 2730-32, 2746, 2774. He also says that he is missing many teeth, and only has 11 remaining. ECF No. 320, PageID # 3013.

Type II diabetes presents the most immediate threat to his health. His most recent medical report indicates that his diabetes is "uncontrolled," and that his A1C was "10.2% up from 9.5% last fall." ECF No. 315, PageID # 2745. An A1C number below 5.7% is considered normal, with an A1C number between 5.7 and 6.4 classified as prediabetic. A number of 6.5 or higher is in the diabetic range. Centers for Disease Control and

---

[1] The time remaining on his sentence distinguishes this case from *United States v. Alvarez*, a decision cited by the Government. ECF No. 317, PageID # 2918. In *Alverez*, the court did state that "[c]hronic conditions that can be managed in prison are not a sufficient basis for compassionate release." 2020 WL 3047372, at *5 (D. Or. June 8, 2020) (internal quotation marks omitted). In that case, however, the defendant had served "less than 20 percent of his sentence." *Id.*

Prevention, *All About Your A1C*, https://www.cdc.gov/diabetes/managing/managing-blood-sugar/a1c.html#:~:text=A%20normal%20A1C%20level%20is,for%20developing%20type%202%20diabetes. Maka's diabetes has also "progressed to involve his kidneys." ECF No. 315, PageID # 2745. Last fall, tests showed that Maka's "eGFR was 38," *id.* at 2756, supporting his stage 3 chronic kidney disease diagnosis.

Finally, Maka's diabetes has affected his eyes and his feet. His latest medical report notes that, as a result of his diabetes, he has "advanced DM neuropathy," can "barely feel his feet," and has "poor eyesight."[2] *Id.* As a result of these issues and a stroke in 2007, Maka has a "waddling gait" that is similar to a "gait of old age." *Id.* at 2746. According to Maka, because of his ailments, he "requires a volunteer companion to help him on a daily basis," and he "will require increasing assistance with activities of daily living." *See, e.g.*, ECF No. 305, PageID # 2624.

Those illnesses affect several of the factors that this court must consider under 18 U.S.C. § 3553. One such factor is a defendant's "characteristics." Maka now describes characteristics that are different from what he cited even two

---

[2] A 2018 vision screening states that Maka's vision was either 20/40 or 20/25 with glasses. ECF No. 315, PageID # 2737. However, this court is not aware of any similar tests conducted after Maka's diabetes began to affect his eyesight.

years ago, when this court considered Maka's last request for compassionate release.  More significantly, Maka's condition makes it less likely that he still poses a threat to the public.  That was an important consideration in both of this court's prior orders.  *United States v. Maka* (*Maka I*), 2020 WL 2544408, at *4 (D. Haw. May 19, 2020) (explaining that the nature of Maka's crimes "raises the concern that . . . he may still pose a threat to the public"); *United States v. Maka*, 2020 WL 6265070, at *4 (D. Haw. Oct. 23, 2020) ("Maka still could pose a threat to the public.").  Because of his failing health, it is unlikely that Maka will be capable of future violence.[3]

The Government raises two arguments in response.  First, the Government contends that certain assertions in the *pro se* brief Maka filed before counsel was appointed demonstrate that he has not been rehabilitated.  ECF No. 317, PageID # 2920.  According to the Government, those statements "minimize[] the horror of his acts."  *Id.*  This court in no way condones any statement trivializing Maka's extremely serious crimes.  ECF No. 305, PageID # 2626.  It appears, however, that Maka did not write those words himself.  Although Maka filed his brief *pro se*, it

---

[3] The Government contends that Maka is still a threat because his history includes the use of firearms, and "[g]uns are tools for the weak as well as the strong."  ECF No. 317, PageID # 2920.  In light of Maka's physical condition, and in particular his potentially deteriorating eyesight, even the use of firearms may now be difficult for him.

seems to have been written by another inmate. *See* ECF No. 316, PageID # 2897.

Moreover, Maka repeatedly asserts (and the Government does not disagree) that he has demonstrated "model behavior while in custody." ECF No. 318, PageID # 3008; *see also* ECF No. 312, PageID # 2718. Maka's prison record provides some evidence of his rehabilitation. If anything, that evidence weighs in favor of a reduction in his sentence.

Second, the Government argues that Maka is responsible for his own condition. ECF No. 317, PageID # 2912. Maka's medical chart indicates that many of the problems associated with his diabetes are "a result of his ongoing addiction to sweets, snacks, and soda." ECF No. 315, PageID # 2746. The Government relies on that entry in his chart to assert that releasing Maka would create a "perverse incentive" for inmates to undermine their own health. *See* ECF No. 317, PageID # 2918; *see also id.* at 2912.

In ruling on compassionate relief requests, this court does not find such arguments persuasive. If, for instance, a defendant with a history of smoking develops lung cancer, this court will not ignore the severity of that condition simply because the defendant could have made healthier choices in the past. A serious illness is a serious illness. And, in this particular case, the Government's concerns about the creation of

9

perverse incentives are misplaced. It seems unlikely that inmates will allow a disease to progress to the point where they are unable to see or to feel their feet to have a chance of appearing more sympathetic in a compassionate release motion.

This court directed the parties to submit supplemental briefing on the question of whether the food Maka is being served in prison is also contributing to the problem. ECF No. 319. That request had nothing to do with holding Maka responsible for his failing health. Instead, this court reasoned that if Maka is more likely to be able to appropriately manage his diet outside of prison, he would have a stronger argument in favor of his release.

The record is ambiguous on this point.[4] Maka has frequently purchased unhealthy snacks from the prison commissary. *See* ECF No. 321-2. As Maka points out, however, *all* of the food options at the commissary are unhealthy, *see* ECF No. 320-2; *see also* ECF No. 320, PageID # 3014, and the prison's meals are apparently not always appetizing to Maka or the best menus for someone with Maka's medical issues. *See* ECF No. 321-1. Maka also says that he cannot eat many of the fruits and vegetables

---

[4] Maka has requested an evidentiary hearing to provide further clarity. ECF No. 326. The Government has opposed that request. ECF No. 327. It appears that a hearing would have limited value, and, in any event, the record permits this court to grant Maka's request without holding a hearing. Because this order renders Maka's request moot, that request is denied.

that are offered to him as a part of the standard prison meals because he is missing most of his teeth. ECF No. 320, PageID # 3013. Thus, there is at least a possibility that the standard prison diet drives Maka to purchase snacks from the commissary, where his options are limited. If released from prison, Maka might have access to healthier options that might help him to better manage his diabetes. On the other hand, his diet might not improve even if he is released. In ruling on the present motion, this court cannot predict what Maka's future diet will be.

This court need not resolve that question. After considering Maka's physical condition, the time remaining on his sentence, and his record while in prison, this court concludes that Maka has demonstrated that extraordinary and compelling reasons justify a reduction in his sentence. His motion is granted.

This court considers this a close case. Maka's medical conditions, while clearly serious, may not be as acute as those faced by numerous other inmates. Maka's crimes are more serious than those committed by many other inmates. But it is the totality of the circumstances presented to this court that causes this court to exercise lenity.

**III.    CONCLUSION.**

Maka's motion for compassionate relief is granted.

11

His sentence of incarceration is reduced to time served.  Upon release from custody,[5] Maka shall begin serving a 3-year term of supervised release as previously ordered by the court, and he shall abide by all mandatory, standard, and special conditions as stipulated to by the parties and approved by the court in a separate order.

It is so ordered.

DATED: Honolulu, Hawaii, August 10, 2022.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

*United States v. Maka*, Cr. No. 03-00084 SOM; ORDER GRANTING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE

---

[5] The court's understanding is that Maka is subject to an immigration detainer.  In an earlier compassionate release motion, Maka took the position that he could raise arguments for avoiding deportation.  This court questioned the validity of those arguments, although, of course, the court recognized that any deportation decision was not this court's to make.  At this point, this court mentions that earlier discussion only in the context of noting that Maka is clearly on notice of possible immigration consequences, which he earlier contended could affect his access to medical treatment.  Maka nevertheless seeks the relief this court now grants.